Marshall, C. J.
 

 Upon this record two questions
 
 *207
 
 arise: First, whether the ordinance providing for the examining and checking by the planning commission of plats of lands located outside of the municipality and within three miles thereof, and making a charge for such examining and checking in the sum of $5 for the first lot and $3 for each ad-, ditional lot, is valid; second, whether the fees paid by plaintiff were involuntarily paid. These questions will be considered in their order.
 

 Municipalities in Ohio have only such powers as are conferred upon them, either directly by the Constitution, or by the Legislature under authority of the Constitution. While the home-rule provisions of the Ohio Constitution, found in Article XVIII, confer certain powers upon municipalities, and while the provisions of that article are self-executing, the provisions of that article do not confer any extra-territorial authority. The direct authority given by that article is expressly limited to the exercise of powers within the municipality. The city of Youngstown therefore has only such authority in the matter of examining and checking plats of lands outside of the city as may be found to be conferred by statute.
 

 Section 4366-1, General Code, provides for the establishment of a city planning commission. Section 4366-2 defines the powers and duties of the planning commission, in part, as follows:
 

 “The powers and duties of the commission shall be to make plans and maps of the whole or any portion of such municipality, and of any land outside of the municipality, which in the. opinion of the commission bears relation to the planning of
 
 *208
 
 the municipality, and to make changes in such plans or maps when it deems same advisable.”
 

 That section further provides that the commission may make recommendations for new streets, alleys, ways, viaducts, bridges, subways, parkways, parks, playgrounds, and other public improvements, and for the removal, relocation, widening, or extension of existing public works.
 

 Section 4366-5 provides for the employment of architects, engineers, and other employees which the commission shall deem necessary for the performance of its planning and platting functions. Section 4366-3 provides that the planning commission shall be the platting commission. Prior to the enactment of these sections, Section 4346 provided for a platting commissioner authorized to prescribe regulations governing the platting of lands, and further provided:
 

 “When any person plats .any lands within three miles of the corporate limits of a city, the platting commissioner shall, if they are in accordance with the rules as prescribed by him, endorse his written approval thereon, and no plat of such land shall ,be entitled to record in the recorder’s office in the county in which such city is located without such written approval so endorsed thereon * *
 

 Section 4346 is still in full force and effect.
 

 While the foregoing statutes seem plain and free from ambiguity, and to cover the situation, the Legislature at a later date enacted Section 3586-1, which provides that whenever a city planning commission shall have adopted a plan for the major streets or thoroughfares, and for the parks and other public grounds of said city, or any part thereof,
 
 or for the
 
 
 *209
 

 territory within three miles of the corporate limits thereof,
 
 no plat of a subdivision of land within such city or such territory shall be recorded without the approval of the planning commission indorsed in writing on the plat. In the same section further provision is made for rules and regulations to be adopted by the planning commission “governing plats and subdivisions of land falling within its jurisdiction to secure and provide for the co-ordination of the streets, within the subdivision with existing streets and roads, or with the city or village plan or plats, for the proper amount of open spaces for traffic, circulation and utilities and for the avoidance of future congestion of population detrimental to the public health or safety.”
 

 It will be seen, therefore, that legislation not only specifically confers the authority, but also states the reasons therefor. Plaintiff in error will not contend that the Legislature may not confer upon the municipality authority to examine and check plats within the municipality, but its objection is directed to the exercise of that authority over property outside the municipality.
 

 The expenditure of municipal energy in whatever form, and in whatever field, whether designed to promote the territorial growth, or to increase the wealth, or to develop the industrial and commercial strength, or to advance the social, moral, and educational interests of the inhabitants of the municipality, must inevitably reflect the benefits of that energy in large measure upon a zone of territory surrounding and adjacent to the municipality. Not the least of the benefits to the surrounding territory is the increase in the value of property. Every
 
 *210
 
 growing municipality must, from time to time, annex surrounding territory to provide homes and institutions for its increasing population. It is equally true that the owners of property adjacent to a municipality look forward to the time when their agricultural lands of limited value will become subject to municipal uses which will greatly enhance their value. In recognition of the mutual interests of cities and surrounding territory, Legislatures have given to municipalities certain regulatory authority over their environs.
 

 It has been held that a city may exercise police power in the protection of territory outside of the city to insure cleanliness and to prevent any business and conduct likely to corrupt the source of water supply for the city.
 
 City of Coldwater
 
 v.
 
 Tucker,
 
 36 Mich., 474, 24 Am. Rep., 601. A city may acquire outside territory for sewerage purposes and exercise police power over the same.
 
 Coldwater
 
 v.
 
 Tucker, supra.
 
 It may establish quarantine beyond municipal boundaries to protect citizens from epidemic or contagious and infectious diseases.
 
 Harrison
 
 v.
 
 Mayor and City Council of Baltimore,
 
 1 Grill (Md.), 264. It may locate and regulate houses of detention and hospitals for contagious diseases beyond the city limits.
 
 City of Anderson
 
 v.
 
 O’Connor,
 
 98 Ind., 168;
 
 Allentown
 
 v.
 
 Wagner,
 
 214 Pa., 210, 63 A., 697;
 
 Hazen
 
 v.
 
 Strong,
 
 2 Vt., 427. It may provide for the inspection of milk sold in the city and require dairies located outside of the city to register and to pay a registration fee to cover expenses of inspection.
 
 City of Norfolk
 
 v.
 
 Flynn,
 
 101 Va., 473, 44 S. E., 717, 62 L. R. A., 771, 99 Am. St. Rep., 918.
 

 
 *211
 
 Section 4577, General Code, gives to police courts final jurisdiction over misdemeanors committed within the limits of the city, or within four miles thereof. This statute was under consideration in
 
 State of Ohio
 
 v.
 
 Fendrick,
 
 77 Ohio St., 298, 82 N. E., 1078, and Shauek, C. J., made the following pertinent observation: '
 

 “There appears to be neither doubt nor occasion for it that a valid statute confers upon the police court jurisdiction of the offenses of the character of this if committed within the limits of the city, or within four miles thereof.”
 

 In that case a misdemeanor had been committed outside of the city, within four miles thereof, and a jury was impaneled composed of jurors drawn wholly from within the city, and the panel was attacked on that ground. The conviction was- upheld by this court.
 

 All of these exercises of extra-territorial authority present a strong analogy to the authority exercised in the case at bar. It would be difficult, and it is unnecessary, to enumerate all the ramifications of mutual duty and obligations between cities and surrounding territories. As a city grows, homes and industrial, commercial, educational, and religious institutions spring up outside the city limits, and all these require utility service which only the city can furnish. It is not contended that a city may by virtue of necessity arrogate to itself any regulatory authority over the people or property located in close proximity, and it is conceded that it has only such authority as may constitutionally be conferred by legislation. The claims of the city of Youngstown in this case rest upon the statutes
 
 *212
 
 hereinbefore quoted, and those statutes being clear and applicable the only legal problem is one of legislative power. Legislation has conferred upon cities regulatory powers over adjacent territory for so long a period, in so many jurisdictions, arid in such a variety of matters, that the general principle has become firmly established, and, the question being one of legislative power, the inquiry must relate to the reasonableness of the regulation, and the justiciable question is whether the regulatory authority conferred has a reasonable relation to the governmental purpose to be served. If it has such reasonable relation, it becomes only a question of legislative wisdom with .which the courts have no concern. Ohio statutes make ample provision for annexation of adjacent territory to cities, but this is not a question of annexation. If it were, the problem would be even less difficult. By the provisions of Section 3551, General Cqde, a municipality may by ordinance reject an application for annexation on the part of surrounding property owners, and this is true even though the county commissioners may have taken favorable action upon such application. In the instant case the realty company'has not applied for annexation, but does seek to obtain approval of a plat of íands outside of the city, which are sought to be made an addition to the city. As a bald question of power the city should be able to veto the one proposition as well as the other. A growing city cannot make election ainong surrounding parcels. There is no element of compensation or bargain and sale. It must annex the lands which lie nearest. In numerous instances cities have been built in haphazard fashion
 
 *213
 
 without definite plan and without thought of such municipal functions as providing civic centers, boulevards, scenic beauty, and without thought of other esthetic considerations, and later have sought to correct the early mistakes at enormous expense. Modern vehicular traffic requires broad highways between cities. Our State Highway Code has recognized this need by making provision for the establishment and improvement of inter-county and main market highways. All highway exits and entrances must necessarily traverse the adjacent territory, and the statement that narrow streets and other obstructions without limit may be established by suburban owners, and that the Legislature is powerless to intervene, is a travesty on justice and government.
 

 Section 3714, General Code, requires a city to maintain its streets and keep them open to travel, and imposes a liability for damages arising out of neglect to discharge that duty. That liability attaches likewise to a city where a highway is brought into a city by annexation.
 
 City of Steubenville
 
 v.
 
 King,
 
 23 Ohio St., 610. And this was- held by this court to be true even though the highway had never been accepted and confirmed by an ordinance specially passed for such purpose. The grades, curves, width, and other characteristics of a street can become firmly established and become vested property rights by establishment and user before annexation, and it may be difficult and expensive and sometimes impossible to make changes after annexation. Lands can be annexed without the consent and even against the remonstrance of a majority of the persons residing in the annexed territory.
 
 Blanchard, Treas.
 
 v.
 
 Bissell,
 
 11 Ohio St., 96;
 
 Railroad Co.
 
 v.
 
 Defiance,
 
 
 *214
 
 52 Ohio St., 262, 40 N. E., 89. In the former case it was held that lands so annexed are liable to local taxation to pay pre-existing debts of the city. We entertain no doubt of the power of the Legislature to confer authority upon the planning commission to examine and check plats of lands located outside of a city within a limit of three miles, and to refuse to indorse its approval thereon, and we entertain no doubt of the validity of the statute which forbids a plat to be recorded without such indorsement.
 

 The realty company challenges the reasonableness of the fees provided for by the ordinance, and the agreed statement shows that the fees are grossly in excess of the expense of the planning commission. This ordinance must be treated as an inspection ordinance and is invalid if it operates as a revenue ordinance. It is not necessary that the statute should specifically give to the municipality power to charge and collect a fee to cover the cost of inspection and regulation. Where 1 the authority is lodged in the municipality to inspect and regúlate, the further authority to charge a reasonable fee to cover the cost of inspection and regulation will be implied. The fee charged must not, however, be grossly out of proportion to the cost of inspection and regulation; otherwise it will operate as an excise tax, which is clearly beyond the power of a municipality to impose. It is not to be expected that fees can be charged which will exactly balance the cost and expense, and a reasonable excess will not operate to invalidate the ordinance. Inspection and regulation accompanied by a license fee constitute an exercise of the police power, while the impQsition of an'excise tax amounts to an exercise of the taxing power.
 
 *215
 
 Whether or not the surplus of fees over expenses is sufficient to render an ordinance invalid is a mixed question of law and fact. If the excess is small, no question of invalidity is presented. If it is enormously large, it becomes a clear case of operating as an excise tax. Between these extremes there must be a twilight zone where cases must be decided upon their individual facts and where no controlling rule can be declared. The court of common pleas in this case has held the fees to be reasonable. The Court of Appeals in its opinion expressed a different notion, but did not reverse the case. While to this court the excess seems to be large, and it may be suggested that if the fees continue tQ be large, and the expenses small, a serious question might arise in future cases as to the validity of the ordinance on the ground of excessive charges. All questions of the validity of the ordinance are therefore resolved in favor of the municipality.
 

 It remains to be determined whether the payment was voluntarily made. Even if the ordinance is unconstitutional and void the payment cannot be recovered unless it was involuntary and made under coercion. The realty company assigns as the reason for paying the fee that Section 4346, General Code, provides that the plat cannot be recorded without the approval of the planning commission, and further that it had already made contracts to be immediately performed, and that it was therefore compelled to pay the fees in order to make delivery of deeds.
 

 Notwithstanding the provisions of Section 4346 the realty company might have made conveyances without recording the plat by resorting to the simple
 
 *216
 
 expedient of describing tbe property in each instance by metes and bounds, without reference to tbe plat or tbe numbers of lots as thereon shown. Tbe realty company felt that it was a distinct advantage in every way to have tbe. approval of tbe planning commission, and it is needless to say that it was receiving all tbe advantages which tbe municipality afforded to adjacent property, and tbe consequent enhancement of values, and thereupon made tbe payment of fees as provided in the’ ordinance. We find no element of coercion in this fact. It is not sufficient under such circumstances to merely make a declaration of protest. A protest only becomes valuable when some adverse official action is about to be taken and when such action can only be prevented by making tbe payment. In tbe case at bar no official action was threatened, but, on tbe contrary, tbe realty company was an applicant for favors and made tbe payment in order to secure tbe favors. It must therefore be held that its action was purely voluntary and affords no basis for recovery.
 

 Judgment affirmed.
 

 Day and Kinkade, JJ., concur.
 

 Allen, J., concurs in- propositions 2 and 3 of tbe syllabus and in tbe judgment.
 

 Robinson, J., concurs in proposition 3 of the syllabus and in tbe judgment, but dissents from proposition 1 of tbe syllabus.
 

 Jones, J., concurs in propositions 1 and 2 of tbe syllabus, but not in tbe judgment, for tbe reason that
 
 *217
 
 the payment was involuntary and the fees unreasonable.
 

 Matthias, J., concurs in proposition 3 of the syllabus and in the judgment.