OPINION
In this case, the City of Oakwood appeals from a trial court decision allowing Appellee, Tatco, Inc., to operate a drive-through window at a CVS Pharmacy. The pharmacy building is located both in Oakwood and the adjacent City of Kettering. However, the drive-through window (which is used only for picking up prescriptions) is located solely in Kettering.
Tatco applied to both Kettering and Oakwood for approval of the plans for the proposed pharmacy. In the application filed with Oakwood, Tatco asked for "special use" permits for a number of items, including the drive-through window. During the administrative process, Oakwood took the position that its zoning ordinances did not allow drive-through windows for pharmacies. As a result, Oakwood approved the other special permit requests, but did not approve the drive-through window request. Oakwood did not officially "deny" the request; instead, the Planning Commission recommended to the City Council that site approval be conditioned on an understanding that the approval did not include a drive-through use. Subsequently, the City Council approved several CVS special use permits. According to the minutes of the Council meeting, the drive-though window was not considered a "permitted use" and the application for this particular special use was felt to be "moot." The effect, obviously, was to deny the request.
At all relevant times, the drive-through window was shown on the proposed plans as being located in Kettering. Oakwood recognized this fact, but indicated that it was taking a "holistic" approach to the site. Shortly after the Oakwood Council meeting, Kettering approved a preliminary commercial development concept plan for the CVS Pharmacy that included a drive-up window.
Tatco filed a timely appeal from the decision of the Oakwood City Council. On appeal, Tatco asked the trial court to decide whether drive-up windows were a permitted use under Oakwood's city ordinances. Additionally, Tatco asked the trial court to decide if Oakwood could prohibit operation of a drive-up window which was located outside the Oakwood City limits. After both sides briefed the pertinent issues, the trial court found in Tatco's favor. Accordingly, the court reversed the decision of the Oakwood City Council and restrained Oakwood from interfering with the construction and operation of the drive-through window.
Oakwood now appeals to our court, and raises the following assignments of error:
I. The trial court erred to the prejudice of the Defendant-Appellant in finding that the May 17, 1999 decision of the Oakwood City Council was an appealable order.
II. The trial court erred to the prejudice of the Defendant-Appellant in finding that the City of Oakwood did not have the authority to enforce its zoning ordinances upon that portion of a building which extends beyond Oakwood's territorial limits when a majority of that building is located in the City of Oakwood.
III. The trial court erred to the prejudice of the Defendant-Appellant in finding that the provision of the City of Oakwood's zoning ordinance requiring a building within the City of Oakwood with a drive-up window be a minimum of 150 feet from residentially zoned property is unenforceable when the building in which the drive-up window is located is adjacent to residential property located in another political subdivision and the portion of the building in which the drive-in window is located is outside of the city's corporate limits.
After considering the record and applicable law, we find Oakwood's arguments without merit. As a result, the decision of the trial court will be affirmed.
 I
Under R.C. 2506.04, the common pleas court may find that an administrative
 order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court.
In comparison, our review power is more limited. We are required to affirm the common pleas court unless we find:
 "as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." * * * [The scope] of "questions of law" * * * [includes] an abuse of discretion by the common pleas court.
Oberer Dev. Co. v. City of Fairborn (Apr. 23, 1999), Greene App. No. 98-CA-96, p. 5 (citations omitted). Abuse of discretion "connotes an unreasonable, arbitrary, or unconscionable attitude." State ex rel. Gradyv. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
With these standards in mind, we turn to Oakwood's first assignment of error, which is phrased in terms of whether the May 17, 1999 City Council decision was an "appealable order." In the specific issue presented for review, Oakwood claims the trial court abused its discretion by ruling upon a zoning issue that was never formally considered and decided by Oakwood's City Council.
In this regard, Oakwood contended in the trial court, and now alleges on appeal, that the City Council did not carefully evaluate or consider the merits of whether a drive-through window would be detrimental to public health or welfare. Instead, Oakwood granted all of Tatco's "special use permits," and did not formally consider the drive-through window issue due to its belief that such a use was not permitted under City ordinances. Oakwood further argues that if Tatco disagreed with the City's understanding, it should have properly raised the issue before the City approved Tatco's special permits.
At first glance, Oakwood appears to be making a "ripeness" argument. We have previously stressed that "ripeness implies that real issues exist between parties which need to be decided by a court." Copper Care, Inc.v. Ohio Dept. of Human Services (Dec. 28, 1998), Montgomery App. No. 17167, unreported, p. 8 (citation omitted). In Karches v. City ofCincinnati (1988), 38 Ohio St.3d 12, the Ohio Supreme Court said that ripeness involves two steps. The first step is a finality requirement and is met "when ` * * * the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.'" Id. at 14-15 (citation omitted). Then, "[t]he second step requires an injured party to exhaust any available administrative remedies prior to instituting a suit for judicial relief." Id.
Viewed in the this context, the City's argument is not at all convincing. Tatco's application to the Planning commission indicated that the proposed building would contain a drive-through window. The window was also shown on the plans submitted to the City and was discussed throughout the administrative process. For example, a March 18, 1999 letter from Oakwood's City Manager to Tatco confirmed the City's "long-standing" position on the proposed drive-through window. Specifically, the City Manager said that:
 under our ordinances, drive-thru windows are not permitted for a pharmacy use. Furthermore, we have stated from the outset that this exclusion is not a matter which can either be varied or subject to special use approval. Notwithstanding the fact that the drive-thru itself and approximately .42 acres of the 1.126 acre site is located in Kettering, the City of Oakwood can only administer its own zoning ordinance which does not permit the proposed use. Therefore, we cannot process the drive-thru portion of your application.
In direct contrast to the City's position, Tatco argued that the ordinances permitted a pharmacy drive-through use. The City and Tatco then continued to discuss this topic during the remainder of the administrative process.
In a April 30, 1999 memorandum to the Oakwood Planning Commission, City representative, Jay Weiskircher, commented on the request for a drive-though window, as follows:
 At our initial meeting last fall, we advised CVS that our ordinance did not contemplate a drive-thru for a pharmacy application. Therefore, this was not an issue which was subject to either a variance or special use. While we have been adamant that we cannot approve or even consider the drive-thru, CVS has been equally adamant that this is an important component of all of their sites. Notwithstanding the fact that the proposed drive-thru is located in Kettering, as mentioned earlier, we are looking at this a [sic] holistic plan and not a piecemeal application in which the applicant can pick and choose which jurisdictional requirements apply. Therefore, we suggest that if you decide to approve a building and site plan, you do so with the clear understanding that it does not include a drive thru use.
After this letter was written, Tatco gave the City legal opinions from an expert. These opinions indicated that a pharmacy drive-through was a permitted use under the City ordinances. At a subsequent May 5, 1999 Planning Commission meeting, the City's Law Director noted that Tatco had presumed that the drive-through window was permitted. However, the Law Director expressed a contrary opinion, and told the Planning Commission that the use was not permitted under City ordinances. Therefore, the Law Director said that he considered the issue to be moot.
Subsequently, the Planning Commission recommended to City Council that all the CVS special use applications except one (relating to signage) be approved. Notably, the drive-through "special use" permit was not included. The Planning Commission also sent a memorandum to City Council. This memorandum incorporated the text of Weiskircher's prior memorandum about the CVS proposal, including the suggestion that if Council approved the building, it do so with the clear understanding that a drive-through use was not included.
When the City Council met, the City representative and Law Director again stressed that the drive-through window was not a permitted use under City ordinances. At the time Council voted on the special use permits, the Law Director pointed out that the approved plan did not include the drive-through window. Tatco then appealed to the common pleas court from Council's decision.
After the case was appealed to the common pleas court, Oakwood stipulated that Council's action in approving the design of the building without the proposed drive-up window was based on the City Law Director's opinion that the window was not permitted by the ordinances. Oakwood also stipulated that the appeal was limited to three issues, including whether the City had authority to regulate activity outside its borders. Nonetheless, the City argued in the trial court that Tatco was improperly attempting to have the court issue an advisory opinion about whether Oakwood's ordinances allowed drive-in windows to be part of a building which straddled corporate boundary lines. In this regard, the City contended that if Tatco wished to seek a ruling on the issue of a drive-in window, it should have raised and preserved the matter during the administrative process. However, the trial court rejected Oakwood's position and found that the appeal was properly before it. In particular, the court relied on evidence that Oakwood had approved "Tatco's Special Use requests for various construction issues on the condition that the CVS building would not include a drive-up window."
We agree with the trial court that the necessary steps for "ripeness" were met. Although Oakwood approved the site plan and various special uses for the building, it clearly did not approve a drive-through window. Tatco then appealed to the common pleas court, contending that the use was permitted under the City ordinances. Additionally, Tatco argued that the City did not have authority to prohibit activity outside its jurisdictional lines. In Karches, the court observed that R.C. Chap. 2506 appeals involve:
 judicial review of a final administrative decision denying a variance to a property owner. The challenge is that a prohibition against a specific proposed use is unconstitutional; and the task of the trial court is to determine whether the prohibition against the specific proposed use has any reasonable relationship to the legitimate exercise of police power by the municipality.
38 Ohio St.3d at 16. The trial court complied with this assigned task when it considered whether the proposed use was allowed under Oakwood's ordinances. As part of this inquiry, the trial court also properly considered whether Oakwood's attempt to regulate activity outside its city borders was a legitimate exercise of police power.
In light of the above facts, we find substantial, reliable, and probative evidence in the record to support the trial court's findings. Under the circumstances, we do not think Tatco could have done anything more to obtain a ruling from City Council on the matter. As the Ohio Supreme Court has said, "`[t]he basic principle of ripeness may be derived from the conclusion that "judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote."'" State ex rel.Elyria Foundry Co. v. Indus. Comm. (1998), 82 Ohio St.3d 88, 89 (citation omitted). Based on the record, the dispute between Oakwood and Tatco was neither abstract nor hypothetical.
Instead of ripeness, however, what we think Oakwood is really complaining about in this assignment of error is that the trial court failed to remand the case to the City Council. Specifically, if a drive-though window is a proper "permitted use" under City ordinances, Oakwood wants a chance to decide if the proposed use should, nonetheless, be denied on some other ground. Unfortunately for Oakwood, the trial court did not decide the case on this basis. As we said, the court did conclude that a pharmacy drive-though window was a permitted "special use" under the Oakwood ordinances. However, the court's ultimate decision did not rely on this fact. To the contrary, the court found that Oakwood lacked authority under the Ohio Constitution to place restrictions on drive-up windows located in another city. This was clearly an issue involved in the City's denial of the special use permit, since it involved the basic question of whether Oakwood had authority to take a "holistic" approach in approving the CVS site plan. In fact, as we said, Oakwood stipulated in the trial court that the appeal was limited to three issues, one of which was whether Oakwood had authority to prohibit operation of a drive-up window in a building across corporate lines. Accordingly, the trial court did not need to remand the case to City Council, and did not err in finding that Council's decision was an "appealable order."
Based on the preceding discussion, the first assignment of error is overruled.
 II
The final two assignments of error present related issues and will be considered together. In the second assignment of error, Oakwood contends that it has the power to regulate beyond its territorial limits where the particular building is partly located within city limits. Similarly, in the third assignment of error, Oakwood argues that it should be allowed to enforce its zoning ordinances for the benefit of non-residents whose property abuts city boundaries. The trial court rejected these claims, finding that Oakwood does not have the power to apply zoning regulations beyond its boundary lines.
As a preliminary point, we note that Oakwood has abandoned the position taken during the zoning process, i.e., Oakwood no longer claims that its zoning ordinances prohibit drive-through windows for pharmacies. Instead, Oakwood now says that because a part of the CVS premises was a "drive-in establishment" as defined by the Oakwood zoning ordinances, the entire building would have been classified as a drive-in establishment. This, in turn, would mean that a special use permit was required. In this regard, Oakwood contends that it does not have to issue a zoning certificate if the entire proposed structure fails to comply with the terms of the City's zoning codes.
We reject this argument, and agree with the trial court that Oakwood may not constitutionally use its zoning ordinances to exercise extra-territorial authority. See Prudential Co-op. Realty Co. v. City ofYoungstown (1928), 118 Ohio St. 204. In Prudential, the City of Youngstown planning commission charged fees for approving plats that were located outside the city, but were within a three mile radius. After paying the fees, a realty company brought suit, claiming that the City had no authority to pass an ordinance providing for collection and payment of the fees. Id. at 204. The Ohio Supreme Court found that the City could impose the fees, but only because an existing statute gave city planning commissions authority to examine and check plats of land located outside cities, within a limit of three miles. Due to this statutory authority, the City of Youngstown had implied power to assess fees for inspection and regulation. In reaching this holding, the Court stressed that:
 [m]unicipalities in Ohio have only such powers as are conferred upon them, either directly by the Constitution, or by the Legislature under authority of the Constitution. While the home-rule provisions of the Ohio Constitution, found in article XVIII, confer certain powers upon municipalities, and while the provisions of that article are self-executing, the provisions of that article do not confer any extraterritorial authority. The direct authority given by that article is expressly limited to the exercise of powers within the municipality. The city of Youngstown has only such authority in the matter of examining and checking plats of land outside of the city as may be found to be conferred by statute.
Prudential Co-op. Realty Co. v. City of Youngstown (1928),118 Ohio St. 204, 207 (emphasis added).
Accordingly, Oakwood could exercise extra-territorial authority over property in Kettering only if the legislature gave Oakwood such authority by statute. Oakwood has not cited any such statute to us, and we have not found one which applies. In the absence of such statutory authorization, the reach of a municipality's police power stops "at the territorial limits of the municipality that elects to exercise it." Springfield v.All Am. Food Specialists, Inc. (1993), 85 Ohio App.3d 464, 469.
Good reasons exist for this restriction. In many places in Ohio, cities abut one another, just as Kettering and Oakwood do. Allowing one city to pass laws which affect residents of another jurisdiction would cause significant animosity and unnecessary litigation. For example, we do not think Oakwood residents would react favorably if the Kettering City Council told them what they could do with their property. Obviously, harmony of standards in adjoining areas is desirable, and cities should co-operate to achieve the best results for all. By the same token, one jurisdiction cannot impose its will on another. Because the relevant property was located in Kettering, the City of Kettering had the right to decide what its permissible use would be.
The same reasoning applies to Oakwood's argument that it has a right to protect those Kettering citizens whose property is adjacent to the pharmacy. In this context, Oakwood relies on a zoning ordinance which provides that drive-through windows may not be located within 150' of any residential property. See Oakwood Zoning Ordinances, § 1107.07. The window in question was located more than this distance from any Oakwood property. In fact, the nearest Oakwood residential property was about 205' away. Oakwood admits this, but contends that property owners outside the City are entitled to the protection of Oakwood's ordinances. In this regard, Oakwood relies on two facts: 1) the ordinance refers broadly to "any" property; and 2) the drive-through window was located about 47' from the nearest Kettering property. Oakwood also argues that Tatco should not be immune from zoning ordinances in either city simply because the property is located in two jurisdictions.
This is not, however, the effect of the trial court's decision. The fact is that Tatco was subject to Oakwood zoning ordinances on the part of the premises located in Oakwood, and to Kettering zoning ordinances for the remaining part. As we mentioned, the drive-through window is located about 47' from the nearest Kettering residential property. However, the Kettering City Council was apparently not disturbed by this fact. Instead, Kettering approved the drive-though window, which it had a right to do, since the window was located on property in the City of Kettering.
We note that Oakwood could have completely rejected the proposed project, but chose not to do so. We can understand why, after comparing the site as it existed before demolition with drawings of the proposed facility. Specifically, an out-dated "eyesore" is being replaced by an attractive facility that meets Oakwood design criteria. Moreover, the only statistics presented indicate that a drive-through window for pick-up of pharmacy prescriptions generates only a few cars per hour — hardly an alarming noise or traffic situation.
In light of the above discussion, the second and third assignments of error are overruled. Having found all assignments of error without merit, we affirm the judgment of the trial court.
YOUNG, J., concurs.
FAIN, J., concurs in the judgment.