[Cite as *Cuyahoga Cty. Land Reutilization Corp. v. Cleveland*, 2022-Ohio-3916.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CUYAHOGA COUNTY LAND : 
REUTILIZATION CORP., ET AL.,

:

        Plaintiffs-Appellants/
        Cross-Appellees, :       No. 111096

        v. :

CITY OF CLEVELAND, ET AL., :

        Defendants-Appellees/ :
        Cross-Appellants.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 3, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-903367

---

### *Appearances:*

Porter, Wright, Morris & Arthur, L.L.P., Robert J. Karl, Eric B. Gallon, and Jared M. Klaus, *for appellants/cross-appellees*.

Mark Griffin, Cleveland Director of Law, Elena Boop, Chief Assistant Director of Law, and Shirley Tomasello, Assistant Director of Law, *for appellees/cross-appellants*.

EMANUELLA D. GROVES, J.:

{¶ 1} Plaintiffs-appellants Cuyahoga County Land Reutilization Corp. (the "Land Bank") and CLB Services, LLC ("CLB") (collectively, "Appellants") appeal the

trial court's ruling finding that an asbestos abatement fee levied by defendants-appellees city of Cleveland (the "City"), through Merle Gordon, Director of Cleveland Department of Public Health; and David G. Hearne, Interim Commissioner of Cleveland Division of Air Quality (collectively, "Appellees") was authorized under the Cleveland Codified Ordinances ("C.C.O."). Cross-appellant City appeals the trial court's award of fees. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} The Land Bank is a non-profit, government-purposed entity that acquires blighted properties and either rehabilitates, sells, demolishes, or determines other beneficial community use for the property. CLB is a wholly-owned subsidiary of the Land Bank. It contracts with the Land Bank to provide asbestos surveying and abatement services.

{¶ 3} Whenever Appellants demolish a building containing asbestos, the Ohio Administrative Code requires them to submit a ten-day notice to the Ohio Environmental Protection Agency (the "Ohio EPA"). The notice informs the Ohio EPA that the owner or operator of a property is going to begin a "demolition operation, asbestos stripping or removal work, or any other activity including salvage activities and preparations that break up, dislodge or similarly disturb asbestos material * * *." Ohio Adm. Code 3745-20-03(A)(3)(a). Each ten-day notice must be accompanied by a $75 fee to the state. R.C. 3745.11(G).

{¶ 4} In order to conduct its business throughout the state, the Ohio EPA works with "local air pollution control authorities" ("LAA"). The city of Cleveland

Department of Public Health's Division of Air Quality ("CDAQ") functions as the local air pollution control authority for all of Cuyahoga County.

{¶ 5} In its role as an LAA, CDAQ receives, logs, and reviews ten-day notices submitted for projects in Cuyahoga County. CDAQ is also required to conduct asbestos regulation, inspections, and enforcement activities on behalf of the Ohio EPA. Pursuant to a delegation agreement between the City and Ohio EPA, from 2017-2019 and 2019-2021, CDAQ on behalf of the City was required to inspect at least 15 percent of demolition and renovation sites in Cuyahoga County and to attempt to observe asbestos-abatement work in progress. CDAQ was also required to review demolition permits.

{¶ 6} Beginning January 1, 2018, CDAQ's responsibilities as an LAA changed. At that time, ten-day notices were required to be submitted directly to the Ohio EPA Division of Air Pollution Control's Central Office. However, CDAQ maintained that they were still required to review ten-day notices and were given the added responsibility of reviewing the licensing of asbestos contractors.

{¶ 7} As compensation for CDAQ's role as an LAA, Ohio EPA remits 80 percent of each $75 ten-day notice fee to CDAQ for projects within Cuyahoga County. However, the City is also required to obtain $393,000 in local program funds for each year of the delegation agreements to maintain an adequate level of funding. As an acknowledgement that LAA's must obtain local funding, the ten-day-notice application contains an advisement as follows: "Please be aware that some local air agencies may have additional fees."

{¶ 8} When the Land Bank demolishes a property in the city of Cleveland, it obtains a permit from the city of Cleveland's Department of Building and Housing ("Building and Housing"). Building and Housing reviews the permit application and also forwards it to CDAQ for review. CDAQ then cross-checks the application with the Ohio EPA's database to confirm that a ten-day notice has been filed. CDAQ also confirms that the information on the permit application is consistent with the information in the ten-day notice. CDAQ then signs off on the permit.

{¶ 9} Building and Housing collects a fee for demolition permits, a minimum of $50 for 1-family, 2-family, or 3-family dwelling houses; and a minimum of $300 for other buildings. CDAQ charges a separate $50 fee for demolitions that involve asbestos to cover the review of the application and to conduct any necessary inspections.

{¶ 10} On April 2, 2015, Gus Frangos, the Land Bank's president, wrote a letter to CDAQ's Chief of Enforcement, who at the time was Valencia White ("White"), asking for a written legal explanation of CDAQ's authority to charge the $50 local-asbestos fee. White responded by letter on April 13, 2015, noting that C.C.O. 263.01 authorizes the local-asbestos fee.

{¶ 11} On June 27, 2018, CDAQ sent an "Air Pollution Code Order to Abate for Failure to Pay Building Asbestos Demolition/Renovation Fee" to Cherokee Demolition ("Cherokee"). The Land Bank had hired Cherokee to demolish four properties in the city of Cleveland. In the letter, CDAQ indicated that it had sent three prior invoices to Cherokee that had not been paid. Further, the letter

threatened criminal prosecution if payment was not made within seven days of receipt of the letter. The City alleges that it subsequently sent notices removing the threat of criminal prosecution for failure to pay the fee.

{¶ 12} On September 6, 2018, the Appellants filed a complaint requesting declaratory and injunctive relief against the City, Merle Gordon, as Director of the Cleveland Department of Public Health, and David Hearne, as Interim Commissioner for the Cleveland Division of Air Quality. Appellants requested a declaration that "the $50 fee imposed by CDAQ on ten-day notices is unauthorized under the Cleveland Codified Ordinances, as well as the Fourteenth Amendment to the United States Constitution; and violates the Home Rule Amendment to the Ohio Constitution, as well as R.C. 3704.11(B)." Further, Appellants requested a permanent injunction preventing Appellees from taking any further action to collect the $50 fee.

{¶ 13} On December 10, 2018, Appellees filed an answer and counterclaimed on behalf of the City. Appellees alleged that the fees were authorized under C.C.O. 263.01(a)(6). The City counterclaimed for unpaid fees totaling $217,450 for ten-day notices dating back to 2013. Over the course of the litigation, the City revised the fees, alleging that the Appellants owed $235,038 in unpaid asbestos fees.

{¶ 14} Trial commenced on April 30, 2021. After hearing testimony, the trial court ruled that C.C.O. 263.01, in conjunction with related ordinances, authorized the City to assess and CDAQ to collect the local $50 asbestos fee when a demolition

permit application is reviewed. The court also found that there was "implied authority to charge a fee for permitted services of the municipality" and that Appellees were entitled to deference for their "long-term understanding and procedures that they have the authority to impose and collect the fee in furtherance of the health, morals, safety, or welfare of the general public." The trial court further found that the $50 asbestos fee was not grossly unreasonable and was, therefore, constitutional.

{¶ 15} With respect to the City's counterclaim, the trial court ruled that the fee was "unrelated to CDAQ's status as [an] LAA under its Declaration Agreement with the [Ohio] EPA and CDAQ's review of ten-day notices absent a demolition permit application." In other words, the court determined that CDAQ was not authorized to receive the fee without an accompanying demolition permit application. The trial court found that the City's evidence did not distinguish between ten-day notices that accompanied a demolition permit application and those that did not. Consequently, the court further found that the City presented insufficient evidence to support its counterclaim for local-asbestos fees during the period 2013 through 2017. However, the court found that Appellant's evidence established that in 2018, the Land Bank submitted 419 demolition permit applications accompanied by a ten-day notice. The court determined that the evidence established that there were $20,950 in unpaid local-asbestos fees for 2018.

{¶ 16} Appellants appealed, assigning the following errors for our review:

### Appellants' Assignment of Error No. 1

The trial court erred in holding that Appellees are authorized to charge the fee.

### Appellants' Assignment of Error No. 2

The trial court erred in awarding Appellees partial judgment on their counterclaim.

{¶ 17} The City cross-appealed and assigned the following errors for review:

### Cross-Appellants' Assignment of Error No. 1

The trial court erred by awarding the City only a partial judgment on its counterclaim — a partial judgment the trial court held was based on only CDAQ's fees for reviewing applications for a building permit.

### Cross-Appellants' Assignment of Error No. 2

The trial court erred in its calculation of the counterclaim by finding that the City is only entitled to collect a $50 local fee for demolition permit applications submitted for the year 2018, and not also for the other years — 2013-2017.

## Law and Analysis

{¶ 18} For ease of analysis, we will address the assignments of error in combination when feasible. In the first assignment of error, Appellants argue that the $50 asbestos fee was not authorized for three reasons: 1) it is not authorized in the C.C.O.; 2) CDAQ did not possess implied authority to assess the fee; and 3) even if deference is given to CDAQ's interpretation, the ordinances do not support the fee.

{¶ 19} In our review of a declaratory judgment action, "legal questions are subject to a de novo standard of review whereby no deference is given to the trial court's decision." *Gill v. Guru Gobind Sikh Soc. of Cleveland*, 8th Dist. Cuyahoga No. 104634, 2017-Ohio-7163, ¶ 29, citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-

Ohio-3208, 972 N.E.2d 586, ¶ 1, 13. The central question in this case is whether the C.C.O. authorize the $50 asbestos fee. The interpretation of ordinances, like the interpretation of statutes, is a matter of law, therefore calling for de novo review. *Cleveland v. Jeric*, 8th Dist. Cuyahoga No. 89687, 2008-Ohio-1825, ¶ 8.

{¶ 20} We begin with a review of C.C.O. 263.01 and related ordinances to determine whether they authorize the imposition of the $50 asbestos fee. The rules for reviewing an ordinance are the same as those that apply when reviewing a statute. "The primary goal of statutory construction is to give effect to the legislature's intent." *Yoby v. Cleveland*, 2020-Ohio-3366, 155 N.E.3d 258, ¶ 20 (8th Dist.), citing *Ayers v. Cleveland*, 160 Ohio St.3d 288, 2020-Ohio-1047, 156 N.E.3d 848, ¶ 17. The intent of the legislature is determined by looking at the plain language of the statute. *Id.*, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 676 N.E.2d 519 (1997).

{¶ 21} If the plain language is clear and unambiguous, "we apply the language as stated without interpretation or construction." *Id.* at ¶ 21. Additionally, ordinances relating to the same general subject matter must be read in pari materia, i.e., construing them together to give each the proper force and effect. *United Tel. Co. v. Limbach,* 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994), citing *Maxfield v. Brooks*, 110 Ohio St. 566, 144 N.E. 725 (1924). However, if the language is ambiguous, "i.e., if the language of the ordinance is susceptible to more than one reasonable interpretation, we must apply rules of construction to interpret the ordinance." *Yoby* at ¶ 20.

{¶ 22} The City focuses on C.C.O. 263.01(a)(6), which it cites as authorization for the $50 asbestos fee. That ordinance states, in pertinent part,

> (a) Fees for the examination of plans and applications for the issuance of permits, variances, and for the original inspection and permit to operate for the installation, and modification of any air contaminant source or control equipment, within the jurisdiction of this code, and renewal of permits to operate shall be as follows:

|  | **Permit to Install or Modify and Initial Permit to Operate and Variance** | **Renewal Permit to Operate** |
| --- | --- | --- |
| (6) *Any Other Air Contaminant Source.* Any other air contaminant source and not included in the above schedule | $100.00 | $50.00 |

{¶ 23} The City suggests that the term "any air contaminant source" includes asbestos emitted during demolition or asbestos abatement work. A review of the codified ordinances supports this argument. Asbestos is defined as a hazardous air pollutant, i.e., an air contaminant that can cause serious and irreversible or incapacitating reversible illness to the public, under C.C.O. 281.01(a) and (b). A "source" includes any "building, structure, facility, operation, installation, other physical facility or real or personal property, which * * * may emit any air pollutant." The code further recognizes that asbestos emissions during demolition should be strictly regulated to prevent public exposure to the pollutant. C.C.O. 281.03(b).[1]

---

[1] Cleveland Codified Ordinances 281.03(b) states, "No person shall cause or allow the demolition of any building or structure, or parts thereof, where a risk of public exposure to asbestos fibers from the dislodging of asbestos containing materials is present, or without obtaining a permit to demolish from the Commissioner of Building, as required by Section 277.02(a). Adequate precautions to prevent or reduce asbestos dust emissions shall be taken as prescribed in Section 277.02(a)."

{¶ 24} Looking back at C.C.O. 263.01(a)(6), we note that it only references permits to "install or modify" and does not specifically mention demolition or asbestos abatement. However, the word "[m]odify" is defined as "[a]ny physical change in * * * a source of air pollutants that * * * [r]esults in the emission of any type of air pollutant not previously emitted." C.C.O. 251.37.

{¶ 25} Based on the foregoing, it is clear that "any other air contaminant source" includes asbestos emissions that occur during demolition or asbestos abatement activities. As such, C.C.O. 263.01(a)(6) authorizes a fee for "the examination of plans and applications for the issuance of permits, variances, and for the original inspection and permit to operate for the installation and modification of any air contaminant source or control equipment * * *."

{¶ 26} Nevertheless, Appellants argue that they are exempt from the fees listed in C.C.O. 263.01. They allege that C.C.O. 261.02 provides that the requirements of Chapters 257 and 259 (which govern CDAQ permits) do not apply to the "demolition of buildings." Consequently, the Appellants suggest that they are not required to pay the fee required by C.C.O. 263.01(a)(6) because C.C.O. 261.02 exempts them from obtaining a permit from CDAQ.

{¶ 27} This argument, however, ignores that C.C.O. 261.02(a)(2) specifically provides that "[p]ermits may be required for [demolition of buildings] under the provisions of Chapters 277 and 281." Further, the argument fails because C.C.O. 261.02 does not preclude the City from assessing fees. It merely states that:

(a) The provisions of Chapters 257 [installation and modification permits] and 259 [operation permits and variances] shall not apply to the following classes of sources:

* * *

(2) Demolition of buildings, authorized open burning, sandblasting and/or building cleaning, spray applications of fiberated cementitious products and spraying of asbestos containing products. Permits may be required for such operations under the provisions of Chapters 277 and 281;

* * *.

{¶ 28} Examining the plain language of C.C.O. 261.02, we find that it simply indicates that someone obtaining a demolition permit is not required to also obtain a permit from CDAQ. It further acknowledges that a permit may be required under other provisions of the code. As noted previously, C.C.O. 281.03(b) and 277.02(a) and (b) require the acquisition of a demolition permit from Building and Housing whenever demolition poses a risk of public exposure to asbestos fibers and requires CDAQ review.

{¶ 29} It is clear that part of the process of acquiring a demolition permit includes CDAQ's review of the application. The purpose of CDAQ's review is to determine whether asbestos emissions are properly addressed. Furthermore, C.C.O. 263.01(a)(6) unambiguously allows the City to collect a fee for that review when a demolition permit is obtained. Consequently, we agree with the trial court's finding that the codified ordinances authorize the imposition of the $50 asbestos fee.

{¶ 30} The trial court also found that the fee was allowed because the City had "implied authority" to assess the fee for its services. "Where the authority is lodged in the municipality to inspect and regulate, the further authority to charge a reasonable fee to cover the cost of inspection and regulation will be implied." *Prudential Co-op. Realty Co. v. Youngstown*, 118 Ohio St. 204, 160 N.E. 695 (1928). However, the fees must not "be grossly out of proportion to the cost of inspection and regulation." *Id.* Appellants do not challenge the holding in *Prudential*; however, they argue that "there is no ordinance authorizing CDAQ's fee." Specifically, Appellants argue that the city of Cleveland's charter rejects implied fees and that without an ordinance expressly permitting the fee, the City cannot assess it. The City's charter provides "that the City shall exercise all powers '* * * in the manner prescribed by this charter, or when not proscribed herein, in such manner as shall be provided by ordinance or resolution of council.'" *Cleveland v. Riebe*, 8th Dist. Cuyahoga No. 34889, 1976 Ohio App. LEXIS 7241, 7 (July 29, 1976.), quoting the Cleveland City Charter Section 1.

{¶ 31} In the instant case, contrary to the Appellants' assertion, the codified ordinances authorize the fee; therefore, we need not determine whether the fee is implied in this assignment of error. The fee is explicitly authorized.

{¶ 32} Finally, Appellants argue that the trial court erred in giving deference to CDAQ's interpretation of the applicable ordinances. "It is a fundamental tenet of administrative law that an agency's interpretation of a statute that it has the duty to enforce will not be overturned unless the interpretation is unreasonable." *State ex*

*rel. Clark v. Great Lakes Constr. Co.*, 99 Ohio St.3d 320, 2003-Ohio-3802, 791 N.E.2d 974, ¶ 10, citing *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 750 N.E.2d 130 (2001). Appellants argue that the City's witnesses were not able to explain how the applicable ordinances govern the fee. Ultimately, the trial court's decision was based on its independent determination that the fee was authorized by the ordinances. The trial court gave deference to CDAQ's determination to assess the fee, not its interpretation of the ordinances themselves. We agree with the trial court's analysis of the applicable ordinances and find that the fee is authorized.

{¶ 33} Accordingly, we overrule the Appellants' first assignment of error.

{¶ 34} In the Appellants' second assignment of error and the City's first cross-assignment of error, the parties both argue that the trial court erred in awarding the City partial judgment on its counterclaim. Appellants argue that the fee is not authorized by ordinance and, therefore, the trial court erred in awarding any fees. This court has already found that the City was authorized to impose the fee. However, we must address the City's challenge to the trial court's limitation of the fee.

{¶ 35} The City argues that the trial court erred in limiting the fees to cases where a demolition permit was obtained. It maintains that any time a ten-day notice was issued, it triggered an inspection, allowing it to assess a fee under C.C.O. 263.01(a)(6), regardless of whether a demolition permit was also obtained. Furthermore, the City argues that it performed duties for the city and as an LAA for

the state, justifying the fee. Therefore, the City suggests that the trial court erred in limiting the fee to only those instances where the evidence proved that a demolition permit had been issued.

{¶ 36} *Prudential* established that "[w]here the authority is lodged in the municipality to inspect and regulate, the further authority to charge a reasonable fee to cover the cost of inspection and regulation will be implied." *Prudential Co-op. Realty Co.*, 118 Ohio St. 204, 160 N.E. 695. However, that power may be limited. The Ohio Supreme Court recognized that a municipal charter may simultaneously give broad powers to the legislative body and "also contain specific prohibitions and restrictions upon the exercise of those powers." *State ex rel. Plain Dealer Publ. Co., v. Barnes*, 38 Ohio St.3d 165, 527 N.E.2d 807 (1988). The court noted that the city of Cleveland's charter limited the City's power such that "all powers '* * * whether expressed or implied, shall be exercised and enforced in the manner prescribed by this Charter * * *.'" *Id at* 167-168, quoting the Cleveland City Charter Section 1. In that case, the authority of the city council to hold private meetings was addressed. The court found that the city council's power was limited by the charter to those powers explicitly listed in the charter or in the ordinances and/or resolutions of the council. *Id.* Therefore, the court found that city council did not have implied authority to act when another more specific section of the charter mandated different requirements. *Id.* In the instant case, therefore, the City's implied authority to issue a fee for its regulatory role over asbestos admissions is determined by the language in the code.

{¶ 37} The administrative code for the City defines the duties of CDAQ's commissioner as follows:

> The Commissioner of Air Quality shall administer and enforce the ordinances of the city of Cleveland relating to air quality; confer, as appropriate, with state of Ohio and federal agencies in regard to environmental matters; plan, manage and implement divisional air program and policies; develop environmental policy recommendations; supervise the preparation of air pollution permits, including enforcement and compliance monitoring; oversee all relevant environmental issues; supervise enforcement, monitoring, permitting and information control; and perform such other duties as may from time to time be required by ordinance or the Director of Public Health.

C.C.O. 141.23

{¶ 38} Further, the City's Air Pollution Code gives the commissioner authority to "adopt, amend, or alter written rules and regulations of [the Air Pollution] Code" as long as such rules and regulations don't conflict or waive any provision of the Air Pollution Code or any other section of the codified ordinances. C.C.O. 255.07(a). The commissioner may do so by following the procedure in C.C.O. 255.07(b) and (c). The commissioner may also "*[c]ollect* and remit to appropriate City officials' fees collected and permits to operate variances and examination of plans and permits to install." (Emphasis added.) C.C.O. 255.02(k). However, the code does not authorize the commissioner to set fees without following proper procedure. A review of C.C.O. 263.01 is required to determine whether it authorizes fees as suggested by the City.

{¶ 39} C.C.O. 263.01 provides:

Fees for the examination of plans and applications for the issuance of permits, variances, and for the original inspection and permit to operate for the installation and modification of any air contaminant source or control equipment, within the jurisdiction of this code, and renewal of permits to operate shall be as follows

{¶ 40} In the ordinance, the word "fees" is followed by a series of prepositional phrases. According to the rule of the last antecedent, "'"a limiting clause or phrase * * * should ordinarily be read as modifying only the noun or phrase that it immediately follows."'" *Salisbury v. FERC*, 36 F.4th 1164, (D.C.Cir.2022), quoting *Lockhart v. United States*, 577 U.S. 347, 136 S.Ct. 958, 194 L.Ed.2d 48 (2016), quoting *Barnhart v. Thomas*, 540 U.S. 20, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). In this rule, each prepositional phrase in the ordinance modifies the noun right before it. A good way to illustrate this concept is through a series of questions:

Fees? What type of fees?

Fees for examination.

Fees for the examination of what?

The examination of plans and applications.

The examination of plans and applications for what?

For the issuance of permits, variances, and for the original inspection and permit to operate for the installation and modification of any air contaminant source or control equipment, within the jurisdiction of this code, and renewal of permits to operate.

{¶ 41} The foregoing analysis illustrates that the ordinance does not authorize fees solely for the examination of plans and applications, but for the examination of plans and applications for the various types of permits listed.

Accordingly, the trial court was correct in determining that the City was only entitled to fees in conjunction with a permit.

{¶ 42} The City, however, argues that its responsibilities as an LAA for the Ohio EPA as well as its responsibilities under the codified ordinances entitle it to assess the fee for every ten-day notice issued, regardless of whether a permit is obtained. This argument, however, fails. The trial court did not find that the City was unable to assess such a fee, rather it found that the C.C.O. as currently written do not authorize the fee except when a permit is obtained. We agree with this conclusion.

{¶ 43} As noted, the powers of the City, pursuant to its Charter, are either contained in the Charter itself or codified in the ordinances or by resolution of council. The ordinance in question, C.C.O. 263.01, does not include fees for CDAQ's role as LAA or the other duties CDAQ performs in order to prevent asbestos air pollution. Therefore, we agree with the trial court's finding that the City was only authorized to assess the $50 asbestos fee when both a ten-day notice requiring CDAQ review and a demolition permit was obtained.

{¶ 44} Accordingly, we overrule Appellants' second assignment of error and overrule the City's first cross-assignment of error.

{¶ 45} In the City's second cross-assignment of error, the City argues that the trial court erred in failing to order Appellants to pay fees for the fiscal years 2013 through 2017. The trial court found, after a review of the evidence, that the City did not distinguish between asbestos abatement activities that required a demolition

permit and asbestos abatement activities that did not require a demolition permit during that period of time. The only evidence that addressed demolition permits was provided by Appellants, and that evidence only covered the 2018 fiscal year. Based on the foregoing, the trial court determined that the City provided insufficient evidence to support its counterclaim for the fiscal years 2013 through 2017. Based on the evidence that was provided, the court found that Appellants owed the City $20,950 in fees for fiscal year 2018.

{¶ 46} The question is whether there was sufficient evidence presented to support the City's counterclaim for unpaid fees. Therefore, we must determine whether the trial court was correct in finding that there was insufficient evidence to support the City's counterclaim.

{¶ 47} "Sufficiency" is

> "'a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

(Emphasis deleted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed. 1990) .

{¶ 48} To determine whether sufficient evidence has been presented, "appellate courts review the evidence presented in the light most favorable to the [party with the burden of production] to determine whether [they] presented some evidence going to all elements of claim or offense." *L.M.W. v. B.A.*, 2022-Ohio-2416,

191 N.E.3d 1240, ¶ 18 (8th Dist.), citing *Vega v. Tomas*, 8th Dist. Cuyahoga No. 104647, 2017-Ohio-298, ¶ 9.

{¶ 49} Le'Kisha Robinson ("Robinson") the information control specialist for CDAQ collected and presented the City's evidence on the number of ten-day notices the Land Bank filed during the period between 2013 and 2018. Robinson identified 5,107 projects for which Appellants filed ten-day notices. She did not have access to determine the number of ten-day notices that were accompanied by a demolition permit application. Robinson also noted that sometimes only an asbestos abatement notice was filed but no demolition permit. Consequently, the City did not provide the trial court with any demolition permits for the fiscal years 2013 through 2017. Without that information, the trial court appropriately found that the evidence was insufficient to support granting the City's counterclaim for the applicable years.

{¶ 50} Accordingly, we overrule the City's second cross-assignment of error.

{¶ 51} Judgment affirmed.

It is ordered that Appellants and Appellees share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

SEAN C. GALLAGHER, A.J., and
EILEEN A. GALLAGHER, J., CONCUR