[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Schaad v. Alder*, Slip Opinion No. 2024-Ohio-525.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-525

SCHAAD, APPELLANT, *v*. ALDER, FIN. DIR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Schaad v. Alder*, Slip Opinion No. 2024-Ohio-525.]**

*Civil law—Municipal taxation—Temporary state law that directed municipalities where an employee's principal place of work was located to collect municipal income tax from the employee when the employee performed work outside that municipality does not violate state or federal Constitutions—Court of appeals' judgment affirmed.*

(No. 2022-0316—Submitted March 1, 2023—Decided February 14, 2024.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-210349, 2022-Ohio-340.

_____

**DEWINE, J.**

**{¶ 1}** During the COVID-19 pandemic, the state legislature passed a temporary law designed to maintain consistency in municipal tax revenues.  In simplified terms, the law provided that for a limited time, Ohio workers would be

taxed by the municipality that was their "principal place of work" rather than by the municipality where they actually performed their work. Am.Sub.H.B.No. 197 ("H.B. 197").

{¶ 2} Josh Schaad worked primarily from his home in Blue Ash during the pandemic. Applying the temporary law, his employer withheld municipal taxes from his wages and forwarded them to Cincinnati, the location of his employer's business. After being denied a tax refund, Schaad filed a lawsuit challenging the law's constitutionality. His principal argument is that the Due Process Clause of the Fourteenth Amendment to the United States Constitution forbids an Ohio municipality from taxing a nonresident for work performed outside of that municipality.

{¶ 3} The question this case presents is whether the General Assembly violated the Due Process Clause by directing that an Ohio citizen pay taxes to the municipality where the employee's principal place of work was located rather than to the subdivision of the state where the employee actually worked. We hold that it did not. Because the First District Court of Appeals came to the same conclusion, we affirm its judgment.

## I. BACKGROUND

{¶ 4} In March 2020, Ohio's governor declared a state of emergency due to the COVID-19 pandemic. Executive Order 2020-01D, *Declaring a State of Emergency*, https://governor.ohio.gov/media/executive-orders/executive-order-2020-01d (accessed May 11, 2023) [https://perma.cc/5HW8-JMNV]. Thereafter, the Ohio Department of Health directed people to stay at home, with certain exceptions. Director's Stay at Home Order, *Director's Order that All Persons Stay at Home Unless Engaged in Essential Work or Activity*, available at extension://nhppiemcomgngbgdeffdgkhnkjlgpcdi/data/pdf.js/web/viewer.html?file=https%3A%2F%2Fcoronavirus.ohio.gov%2Fstatic%2Fpublicorders%2FDirectorsOrderStayAtHome.pdf (accessed May 11, 2023) [https://perma.cc/52PQ-

QBVC]. In short order, the General Assembly passed emergency legislation to deal with the pandemic. *See* H.B. 197.

**{¶ 5}** Section 29 of that legislation provided:

> [D]uring the period of the emergency declared by Executive Order 2020-01D, issued on March 9, 2020, and for thirty days after the conclusion of that period, any day on which an employee performs personal services at a location, including the employee's home, to which the employee is required to report for employment duties because of the declaration shall be deemed to be a day performing personal services at the employee's principal place of work.

**{¶ 6}** Schaad lives in Blue Ash, but before the pandemic, he worked primarily from his employer's Cincinnati office. As a result of the state's directives, Schaad's employer advised him to work from home beginning in March 2020. Schaad complied, returning to the office only occasionally. In June 2020, he began working from home full time, and he did not work from Cincinnati again until December 2020.

**{¶ 7}** Schaad's employer withheld municipal income tax for Cincinnati for the 2020 tax year. Schaad sought a refund from the city for taxes he paid for days that he had worked outside of Cincinnati while the emergency order was in effect. Cincinnati, through its finance director, Karen Alder, denied the refund request.

**{¶ 8}** Schaad sued Alder, alleging that Section 29 violates the United States and Ohio Constitutions because it authorizes a municipality to tax income that nonresidents earned outside the municipality. He requested an injunction prohibiting Section 29's enforcement and a refund of his withheld municipal income taxes.

{¶ 9} The trial court dismissed the lawsuit, and Schaad appealed to the First District.  That court affirmed the dismissal.  It rejected Schaad's argument that Section 29 unlawfully expanded Cincinnati's powers of municipal taxation, reasoning that a municipality may impose taxes for activities performed beyond its borders when permitted by state law.  2022-Ohio-340, ¶ 9-11.  It also rejected Schaad's argument that the Fourteenth Amendment's due process clause prohibits a municipality from taxing a nonresident for work performed outside of the municipality.  *Id.* at ¶ 17.  It explained that the precedent on which Schaad relied "deal[t] with interstate taxation and not intrastate taxation," *id.*, and further, that the enactment survived rational-basis review, *id.* at ¶ 18.

{¶ 10} We accepted Schaad's appeal on the following three propositions of law:

[1.] Section 29 of HB 197 is incompatible with Due Process and this Court's *Angell-Willacy* line of decisions interpreting the Due Process requirements for municipal taxation.

[2.] The General Assembly cannot authorize municipalities to engage in extraterritorial taxation.

[3.] The General Assembly's authority to pass "Emergency Laws" under Article II, Section 1d of the Ohio Constitution does not expand its substantive constitutional powers.

*See* 166 Ohio St.3d 1524, 2022-Ohio-1893, 188 N.E.3d 184.

## II.  ANALYSIS

{¶ 11} Within Schaad's first two propositions of law is a two-pronged argument.  He first argues that the Fourteenth Amendment to the United States Constitution forbids one political subdivision of Ohio from taxing a citizen of another political subdivision for work performed outside of the taxing jurisdiction.

4

Second, he contends that the General Assembly lacks the authority to "legislate around [these] Due Process requirements." The problem with this argument is that the line of caselaw on which Schaad relies interpreting the Due Process Clause is not implicated by the purely intrastate scheme of taxation at issue here.

{¶ 12} We agree with Schaad on his third proposition of law—the General Assembly's power to pass emergency legislation does not expand its "substantive constitutional powers." But that principle does not change the outcome of this case.

## A. The General Assembly Possesses Plenary Authority To Enact Legislation that Does Not Conflict with the State or Federal Constitution

{¶ 13} This case presents a challenge to a state law that directs how municipal taxes are allocated among Ohio's political subdivisions. So, at the outset, it is important to understand the powers of the General Assembly vis-à-vis the various political subdivisions of the state.

{¶ 14} Article II, Section 1 of the Ohio Constitution confers all legislative power of the state on the General Assembly. "The General Assembly has plenary power to enact legislation," *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 127 Ohio St.3d 511, 2010-Ohio-6207, 941 N.E.2d 745, ¶ 10, and therefore, it may "enact *any* law that does not conflict with the Ohio or United States Constitution[s]," (emphasis added) *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 60.

{¶ 15} Municipalities are "political subdivisions" of the state of Ohio— "agencies through which the state administer[s] its government." *State ex rel. Ramey v. Davis*, 119 Ohio St. 596, 599-600, 165 N.E. 298 (1929); *accord Billings v. Cleveland Ry. Co.*, 92 Ohio St. 478, 484, 111 N.E. 155 (1915) ("the municipal government, as well after a charter has been adopted as before, is an arm or agency—a part—of the state"); *Niehaus v. State*, 111 Ohio St. 47, 53, 144 N.E. 433 (1924) (a municipality is "but an agent" of the sovereign state "whose powers may be withdrawn at the will of the sovereign that granted them"). Municipalities may

exercise only such powers as have been expressly granted to them by the Ohio Constitution or the General Assembly. *See Ramey* at 599.

{¶ 16} Through the Home Rule Amendment to the Ohio Constitution, the state has delegated certain powers to municipalities. *See* Ohio Constitution, Article XVIII, Section 3. Municipalities may exercise powers of "local self-government." *Id.* They may also adopt "police, sanitary and other similar regulations" that do not conflict with the "general laws" of the state. *Id.* But every enactment of a municipal government under the home-rule power "rests upon the grant of the state itself, which has delegated to the municipality the capacity to exercise the power." *Billings* at 485.

{¶ 17} The Ohio Constitution explicitly retains the General Assembly's authority to restrict municipal taxation. Article XIII, Section 6 states that the General Assembly "shall provide for the organization of cities, and incorporated villages, by general laws; and restrict their power of taxation * * * so as to prevent the abuse of such power." And Article XVIII, Section 13 provides that "[l]aws may be passed to limit the power of municipalities to levy taxes and incur debts." But absent state legislation to the contrary, the delegation of authority to municipalities through the Home Rule Amendment empowers a municipality to levy and collect an income tax. *Angell v. Toledo*, 153 Ohio St. 179, 184, 91 N.E.2d 250 (1950).

**B. Section 29's Allocation of Intrastate Taxes Does Not Violate the Due Process Clause**

{¶ 18} In his first proposition of law, Schaad contends that Section 29 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, Schaad maintains that the Due Process Clause prohibits one political subdivision of the state of Ohio from taxing the citizens of another political subdivision for work that was not performed in the taxing subdivision.

### *1. Section 29 Easily Survives Rational-Basis Review*

{¶ 19} Traditionally, the United States Supreme Court has divided due process challenges into two varieties: procedural or substantive. Procedural due process isn't applicable here, because Schaad's challenge is to a legislative act of general applicability. *See Smith v. Jefferson Cty. Bd. of School Commrs.*, 641 F.3d 197, 217 (6th Cir.2011), quoting *75 Acres, L.L.C. v. Miami-Dade Cty.*, 338 F.3d 1288, 1292 (11th Cir.2003) (" 'the legislative process provides all the process that is constitutionally due' when a plaintiff's alleged injury results from a legislative act 'of general applicability' ").

{¶ 20} As for the substantive component of the Due Process Clause, Schaad doesn't allege a violation of a fundamental right. That means he can succeed in his challenge only if he can establish that there is no " 'reasonably conceivable state of facts that could provide a rational basis' " for the enactment, *Armour v. Indianapolis*, 566 U.S. 673, 681, 132 S.Ct. 2073, 182 L.Ed.2d 998 (2012), quoting *Fed. Communications Comm. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.211 (1993).

{¶ 21} Here, there was plainly a rational basis for the enactment—Ohio had a legitimate interest in ensuring that municipal revenues remained stable amidst the rapid switch to remote work that occurred during the pandemic. One might disagree with the wisdom of the legislation, but under our traditional standards, the law easily survives rational-basis review. *See Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 77 (the legislature is granted substantial deference under rational-basis review); *Cent. Motors Corp. v. Pepper Pike*, 73 Ohio St.3d 581, 584, 653 N.E.2d 639 (1995), quoting *Willott v. Beachwood*, 175 Ohio St. 557, 560, 197 N.E.2d 201 (1964) (under rational-basis review, the court " 'can not usurp the legislative function by substituting its judgment' " for that of the legislative body).

### 2. Section 29 Does Not Infringe Upon Federalism-Based Due Process Limits on State Sovereignty

{¶ 22} Implicitly recognizing that Section 29 survives rational-basis review, Schaad locates his challenge with caselaw that has placed due process limits on extraterritorial taxation. He relies heavily on this court's decisions in *Angell*, 153 Ohio St. 179, 91 N.E.2d 250, *Hillenmeyer v. Cleveland Bd. of Rev.*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, and *Willacy v. Cleveland Bd. of Income Tax Rev.*, 159 Ohio St.3d 383, 2020-Ohio-314, 151 N.E.3d 561. Those cases represent applications of federal constitutional law—a subject on which we are duty bound to follow United States Supreme Court precedent. *See* U.S. Constitution, Article VI, cl. 2. So we begin with the federal precedent.

### a. The Fourteenth Amendment's Limitations on State Taxing Authority

{¶ 23} The United States Supreme Court has long recognized that our federal system of multiple sovereign states necessarily brings with it limitations on the power of one sovereign state to tax the citizens of another sovereign state. *McCulloch v. Maryland*, 17 U.S. 316, 327, 4 L.Ed. 579 (1819) ("[the] unlimited power to tax involves, necessarily, [the] power to destroy"); *id.* at 429 ("All subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation"). The Supreme Court has, at times, located the source of such limitations in the Commerce Clause. *See, e.g.*, *Adams Express Co. v. Ohio State Auditor*, 165 U.S. 194, 17 S.Ct. 305, 41 L.Ed. 683 (1897); *Trinova Corp. v. Michigan Dept. of Treasury*, 498 U.S. 358, 386-387, 111 S.Ct. 818, 112 L.Ed.2d 884 (1991). And since the enactment of the Fourteenth Amendment following the Civil War, the Supreme Court also has found limitations on the power of one state to tax a citizen of another state in the Due Process Clause of that amendment. *See, e.g.*, *Kirtland v. Hotchkiss*, 100 U.S. 491, 495, 25 L.Ed. 558 (1879); *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 342, 74 S.Ct. 535, 98 L.Ed. 744 (1954); *see also MeadWestvaco*

*Corp. v. Illinois Dept. of Revenue*, 553 U.S. 16, 24, 128 S.Ct. 1498, 170 L.Ed.2d 404 (2008) ("The Commerce Clause and the Due Process Clause impose distinct but parallel limitations on a State's power to tax out-of-state activities").

{¶ 24} Thus, in a series of cases, the United States Supreme Court has identified limits imposed by the Due Process Clause on the authority of one state to tax the citizens of another state. In *Wisconsin v. J.C. Penney Co.*, the Supreme Court took up the power of the state of Wisconsin to tax out-of-state corporations. 311 U.S. 435, 6 S.Ct. 246, 85 L.Ed. 267 (1940). The court explained that the state's authority to tax depended on "whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state" or, in other words, "whether the state has given anything for which it can ask return." *Id.* at 444. Subsequent cases have refined this basic framework in assessing taxation schemes involving out-of-state residents. *See, e.g.*, *Miller Bros. Co.* at 344 (holding that Maryland could not tax a Delaware vendor for sales made in Delaware to Maryland consumers because the vendor had not "by its acts or course of dealing * * * subjected itself to the taxing power of Maryland"). Most recently, the Supreme Court explained that it applies "a two-step analysis to decide if a state tax abides by the Due Process Clause." *North Carolina Dept. of Revenue v. Kimberley Rice Kaestner 1992 Family Trust*, 588 U.S. __, __, 139 S.Ct. 2213, 2220, 204 L.Ed.2d 621 (2019). First, there must be " 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' " *Quill Corp. v. North Dakota*, 504 U.S. 298, 306, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), quoting *Miller Bros. Co.* at 344-345. Second, "the 'income attributed to the State for tax purposes must be rationally related to "values connected with the taxing State." ' " *Id.*, quoting *Moorman Mfg. Co. v. Blair*, 437 U.S. 267, 273, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978), quoting *Norfolk & W. Ry. Co. v. Missouri State Tax Comm.*, 390 U.S. 317, 325, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968).

{¶ 25} The idea behind the due process limitation on the state's power to tax stems from the "venerable if trite observation that seizure of property by the state under pretext of taxation when there is no jurisdiction or power to tax is simple confiscation and a denial of due process of law." *Miller Bros. Co.* at 342. Thus, the limitation imposed by the Due Process Clause has long been understood to be one of jurisdiction: there must be " ' "a minimal connection" between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise,' " *Trinova Corp.* at 373, quoting *Mobil Oil Corp. v. Vermont Commr. of Taxes*, 445 U.S. 425, 436-437, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), quoting *Moorman Mfg. Co.* at 273.

{¶ 26} Indeed, the test for whether a state may exercise its taxing authority over an out-of-state resident "borrows from" the minimum-contacts test used to determine whether a state court's exercise of jurisdiction over an out-of-state defendant comports with the Due Process Clause. *Kaestner*, 588 U.S. at ___, 139 S.Ct. at 2220, citing *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This test "acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

*b. The United States Supreme Court Has Never Applied this Due-Process-Based Limitation to Purely Intrastate Taxation*

{¶ 27} The United States Supreme Court has never held that this federalism-based limitation on state authority applies to taxation that occurs within a single state. To the contrary, it has made clear that this strain of its due-process jurisprudence does not apply to matters of intrastate taxation. *See, e.g.*, *Interstate Oil Pipe Line Co. v. Stone*, 337 U.S. 662, 667-668, 69 S.Ct. 1264, 93 L.Ed. 1613 (1949) ("Since all the activities upon which the tax is imposed are carried on in Mississippi, there is no due process objection to the tax"); *Internatl. Harvester Co.*

*v. Evatt*, 329 U.S. 416, 421, 67 S.Ct. 444, 91 L.Ed. 390 (1947) (taxation did not amount to violation of due process, because transactions at issue were "intrastate activities").

{¶ 28} This makes sense. There is a significant difference between our federal system of government, with its 50 sovereign states and a national government with limited powers, and our state system, which contains one sovereign with plenary authority and various political subdivisions of that sovereign.

{¶ 29} Whereas "the federal Constitution is a delegation of powers, the state Constitution is a limitation of powers." *Angell*, 153 Ohio St. at 181, 91 N.E.2d 250. This means that "an act of Congress is not valid unless the federal Constitution authorizes it," but "the General Assembly of Ohio may enact any law which is not prohibited by the Constitution." *Id.*

{¶ 30} The structural differences between the state and federal governments explain why the federal due process limitation does not apply to intrastate taxation. As one judge explained in rejecting an argument similar to the one advanced by Schaad: it would not "be an appropriate reading of precedent to replace the word 'State' wherever it appears in the relevant case law with 'municipality' and then simply say that the same outcome must obtain with regard to non-residents," *Buckeye Inst. v. Kilgore*, 2021-Ohio-4196, 181 N.E.3d 1272, ¶ 54 (10th Dist.) (Nelson, J., concurring in judgment). This is because "the federal Constitution is structured in significant part to protect the balance that separate states with their own governmental authorities, processes, and determinations can provide, whereas Ohio's Constitution, even while providing for municipal home rule authority, does not similarly limit the general powers of the State to a specified list." *Id.* at ¶ 55 (Nelson, J., concurring in judgment).

{¶ 31} Cases like *Miller Bros. Co.*, 347 U.S. 340, 342, 74 S.Ct. 535, 98 L.Ed. 744, and *J.C. Penney Co.*, 311 U.S. 435, 6 S.Ct. 246, 85 L.Ed. 267, dealt with

limitations on authority inherent in a system with multiple sovereigns. This case—which deals with a single state and a resident of that state—presents a very different issue. Because Ohio is comprised of political subdivisions, not independent city-states, the federal authority on due-process limits on interstate taxation is inapposite.

*c. The Ohio Precedent Relied on by Schaad Does Not Compel a Contrary Conclusion*

{¶ 32} Perhaps recognizing that federal precedent provides scant support for his position, Schaad relies primarily on several cases decided by this court construing the Fourteenth Amendment's Due Process Clause. We note at the outset that Schaad asks a lot of these cases. After all, we are bound by the United States Supreme Court's interpretation of the federal Constitution. *Cooper v. Aaron*, 358 U.S. 1, 18, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958) ("the interpretation of the Fourteenth Amendment enunciated by this Court * * * is the supreme law of the land, and Art. VI of the Constitution makes it of binding effect on the States"). To the extent that our prior decisions depart from the United States Supreme Court's interpretation, our obligation is to correct our course, not double down on our mistakes.

{¶ 33} Schaad relies heavily on two relatively recent decisions by this court: *Hillenmeyer*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, and *Willacy*, 159 Ohio St.3d 383, 2020-Ohio-314, 151 N.E.3d 561. But we find no inconsistency between these cases and the high court's precedent. Both cases involved a municipal ordinance and an out-of-state resident. And in neither case did we hold that purely intrastate taxation violated the Due Process Clause.

{¶ 34} In *Hillenmeyer*, a former Chicago Bears linebacker challenged a Cleveland ordinance that taxed a player's earnings by dividing the total number of games that the athlete played by the number he played in Cleveland. 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, at ¶ 1. In finding the scheme unconstitutional, we looked to the principle that " '[t]he Due Process Clause places

two restrictions on a State's power to tax income generated by the activities of an interstate business.' " *Hillenmeyer* at ¶ 40, quoting *Moorman Mfg. Co.*, 437 U.S. at 272-273, 98 S.Ct. 2340, 57 L.Ed.2d 197. First, there must be a " ' minimum connection between a state and the person, property or transaction it seeks to tax. ' " *Id.*, quoting *Miller Bros. Co.*, 347 U.S. at 344-345, 74 S.Ct. 535, 98 L.Ed. 744. Second, " 'the income attributed to the State for tax purposes must be rationally connected to "values connected with the taxing State." ' " *Id.*, quoting *Moorman Mfg. Co.* at 272-273, quoting *Norfolk & W. Ry. Co.*, 390 U.S. at 325, 88 S.Ct. 995, 19 L.Ed.2d 1201.

{¶ 35} We applied the same two-prong test in *Willacy*. There, we upheld Cleveland's effort to collect income tax from a Sherwin-Williams retiree on certain stock options she exercised after she moved from Ohio to Florida, because the options were granted for work she had performed in Cleveland and were therefore subject to taxation by the city, regardless of when they were exercised. *Willacy*, 159 Ohio St.3d 383, 2020-Ohio-314, 151 N.E.3d 561, at ¶ 1, 32, 29.

{¶ 36} *Willacy* and *Hillenmeyer* involved questions of interstate—not *intrastate*—taxation. And they explicitly relied on United States Supreme Court precedent dealing with due process limitations on state taxing authority in resolving those questions. So they do little to advance Schaad's challenge to the intrastate-taxation scheme at issue here.

{¶ 37} Schaad is on firmer ground in citing several earlier cases from this court: *McConnell v. Columbus*, 172 Ohio St. 95, 99, 173 N.E.2d 760 (1961), *Thompson v. Cincinnati*, 2 Ohio St.2d 292, 297, 208 N.E.2d 747 (1965), and *Angell*, 153 Ohio St. 179, 185, 91 N.E.2d 250. In each of those cases upholding municipal-taxation schemes involving intrastate taxation, this court referred to the federal due process "fiscal relation test" announced in *J.C. Penney Co.*, 311 U.S. 435, 6 S.Ct. 246, 85 L.Ed. 267. In none of those cases, however, did we find that the tax scheme offended due process. Moreover, those cases are inherently different from the one

before us because they involved challenges to municipal-tax ordinances, not state law. The question in each case was how far did the Ohio Constitution's grant of taxing authority to municipal corporations extend: To what extent were municipalities empowered to tax citizens of other jurisdictions who worked in the taxing jurisdiction? In that context, the fiscal relation test—though not mandated by the federal Constitution—provided a useful way of assessing whether it was appropriate for one municipality to tax the citizens of another municipality.

{¶ 38} Our case is different though, because it involves a state law that directed how municipal taxes were to be allocated among political subdivisions of the state. The relevant inquiry is not the extent of the power that has been delegated to a political subdivision by the state but the power of the state itself to regulate taxes within its borders. And on this question, the federal due process clause jurisprudence relied on by Schaad is inapposite. *See Shaffer v. Carter*, 252 U.S. 37, 51, 40 S.Ct. 221, 64 L.Ed. 445 (1920) ("The rights of the several States to exercise the widest liberty with respect to the imposition of internal taxes always has been recognized in the decisions of this court").

{¶ 39} It is true that we might have been more careful in our citation to federal due process principles in those cases. But given our obligations under the Supremacy Clause, we decline to read those cases as overriding controlling United States Supreme Court precedent.

## C. The General Assembly Possessed the Authority to Enact Section 29

{¶ 40} In his second proposition of law, Schaad argues that the state cannot "legislate around" federal due process requirements by authorizing a municipality to collect an extraterritorial tax. But as we have explained, the federal due process clause is not implicated by the purely intrastate-taxation scheme at issue here. Still, the question remains—is there any other legal prohibition that precludes the enforcement of Section 29?

14

**{¶ 41}** We start the analysis by recalling our observation that the state legislature possesses plenary power. As we have explained,

> while the federal Constitution is a delegation of powers, the state Constitution is a limitation of powers. In other words, an act of Congress is not valid unless the federal Constitution authorizes it. On the other hand, the General Assembly of Ohio may enact any law which is not prohibited by the Constitution.

*Angell*, 153 Ohio St. at 181, 91 N.E.2d 250. Thus, we need to figure out if there is anything in the Ohio Constitution that prohibited the General Assembly from enacting Section 29.

**{¶ 42}** Although Schaad relies mainly on federal due process principles, he does suggest that the Home Rule Amendment to the Ohio Constitution limits the legislature's authority to implement the taxation scheme at issue. So we turn to that constitutional provision.

**{¶ 43}** Through the Home Rule Amendment, the state has delegated to municipalities the "authority to exercise all powers of local self-government." Ohio Constitution, Article XVIII, Section 3. We have long understood the power of taxation to be among the powers of local self-government. *See Cincinnati Bell Tel. Co. v. Cincinnati*, 81 Ohio St.3d 599, 605, 693 N.E.2d 212 (1998) ("The municipal taxing power is one of the 'powers of local self-government' expressly delegated by the people of the state to the people of municipalities"); *see also State ex rel. Zielonka v. Carrel*, 99 Ohio St. 220, 227, 124 N.E. 134 (1919).

**{¶ 44}** Though municipalities have been delegated the power to tax, the Ohio Constitution specifically empowers the General Assembly to limit that power. Article XIII, Section 6 provides that "[t]he General Assembly shall provide for the organization of cities * * * and restrict their power of taxation * * * so as to prevent

the abuse of such power." And Article XVIII, Section 13 provides that "[l]aws may be passed to limit the power of municipalities to levy taxes."

**{¶ 45}** The constitutional delegation of the power of local self-government to a municipality means that absent a constitutional provision to the contrary (such as the provisions authorizing the legislature to limit municipal taxation), a municipal law that deals with local self-government will prevail over a conflicting state law. That's because the constitutional command (i.e., the delegation of authority) prevails over a legislative act.

**{¶ 46}** Importantly though, the Home Rule Amendment does not preclude the General Assembly from granting additional powers to municipalities beyond those delegated to them through the Home Rule Amendment. *Prudential Co-op. Realty Co. v. Youngstown*, 118 Ohio St. 204, 207, 160 N.E. 695 (1928) (Ohio's municipalities have "such powers as are conferred upon them, either directly by the Constitution, or by the Legislature under authority of the Constitution"); *Beachwood v. Cuyahoga Cty. Bd. of Elections*, 167 Ohio St. 369, 148 N.E.2d 921 (1958), paragraph one of the syllabus ("The power of local self-government granted to municipalities by Article XVIII of the Ohio Constitution relates solely to the government and administration of the internal affairs of the municipality, and, in the absence of a statute conferring a broader power, municipal legislation must be confined to that area"); *Britt v. Columbus*, 38 Ohio St.2d 1, 309 N.E.2d 412 (1974), paragraph one of the syllabus (same).

**{¶ 47}** These principles make it evident that Section 29 does not violate the Home Rule Amendment. Essentially, what Section 29 does is empower a municipality that is not the one where the employee performs his work to collect a tax from that employee. At the same time, it prevents the municipality where the employee is actually working from collecting a tax from that employee.

**{¶ 48}** Both of these aspects of Section 29 are completely consistent with the Ohio Constitution. In the first aspect, the General Assembly is authorizing the

16

taxing municipality to collect a tax that it would not otherwise have the authority to collect. And in the second, it is limiting the authority of the employee's home municipality to collect a tax. Because the General Assembly has the power to grant a municipality additional authority, and because it has the power to limit a municipality's authority to collect taxes, Section 29 is within the General Assembly's authority to enact.

{¶ 49} In arguing to the contrary, Schaad relies on *Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, 3 N.E.3d 1177. But that case does little to advance his argument. *Gesler* dealt with a conflict between a city tax code that said certain income was tax exempt and a state statute that would have made the same income taxable. The city tax code specifically excluded income reported on Schedule C of a federal income tax Form 1040 from the definition of "net profit" for individual taxpayers, but a state law included such income in its definition of "net profit." *Id.* at ¶ 2. We upheld the taxpayer's exemption claim, reasoning that "the General Assembly cannot command Worthington to impose a tax when Worthington has chosen not to tax that income, because such a requirement is not an act of limitation." *Id.* at ¶ 22. *Gesler* stands for the uncontroversial proposition that because the Ohio Constitution has delegated to municipalities the power of local taxation, the General Assembly cannot force a municipality to collect a tax on income that the city has legislatively exempted from taxation. That's hardly the issue in this case—here, Cincinnati very much supports the additional temporary authority granted to it by the legislature. And there is nothing inconsistent between the Home Rule Amendment's delegation of taxing authority and the legislature's grant of additional taxing authority in Section 29.

{¶ 50} Schaad also relies on *Prudential Co-op. Realty Co.*, but that decision actually cuts against Schaad's argument. At issue in *Prudential* was a state law that authorized a municipal planning commission to exercise certain functions outside

the municipality and required a city official's approval of plats of "any lands within three miles of the corporate limits of the city." 118 Ohio St. at 208, 160 N.E. 695, quoting former G.C. 4346. A company that developed land outside the city challenged the state statute granting the city the authority to regulate beyond its boundaries and also a city ordinance that imposed fees for examining and checking the plats. This court rejected both challenges. Regarding the statutory challenge, this court held that because municipalities may exercise powers conferred to them by the General Assembly, it would "entertain no doubt of the power of the Legislature to confer" such extraterritorial powers on the city planning commission. *Id.* at 214. It also rejected the development company's challenge to the fee imposed by the municipality:

> This ordinance must be treated as an inspection ordinance and is invalid if it operates as a revenue ordinance. It is not necessary that the statute should specifically give to the municipality power to charge and collect a fee to cover the cost of inspection and regulation. *Where the authority is lodged in the municipality to inspect and regulate, the further authority to charge a reasonable fee to cover the cost of inspection and regulation will be implied*. The fee charged must not, however, be grossly out of proportion to the cost of inspection and regulation; otherwise it will operate as an excise tax, which is clearly beyond the power of a municipality to impose.

(Emphasis added.) *Id.* at 214.

{¶ 51} Schaad reads this court's comment that the fee must not function as an excise tax as drawing a "bright line between taxation and other extraterritorial actions that might be authorized by statute." But of course, the issue in *Prudential* was the scope of the authorization provided by the state legislature. The legislation

authorized the planning commission to engage only in extraterritorial regulation; it did not authorize extraterritorial *taxation*. So the municipality's authority to charge a reasonable fee could have been "implied" from the legislative enactment, *Prudential* at 214, but a fee so exorbitant that it would act as a tax could not have been so implied. In contrast here, the legislature enacted Section 29 authorizing municipalities to collect taxes for certain work performed beyond their boundaries. Thus, the *Prudential* decision is of no help to Schaad.

**{¶ 52}** Because Section 29 permissibly limits an employee's home municipality from collecting municipal income taxes from the employee under Article XIII, Section 6 and Article XVIII, Section 13 of the Ohio Constitution, and because it permissibly authorizes the municipality of the employee's principal place of work to collect municipal income taxes from the employee, *see Prudential* at 207, the act was within the General Assembly's constitutional authority.[1]

---

1. The first dissenting opinion takes a different tack than Schaad, but its arguments are ultimately even less persuasive. It begins by asserting that Section 29 "does not have anything to do with assessing a nonresident's municipal-tax liability." Dissenting opinion of Kennedy, C.J., ¶ 57. This view—which is contrary to both a plain reading of the statute and the manner in which it has been applied—was not raised by any party at any stage in this case but instead was presented only in an amicus brief to this court. *See* Brief of Amici Curiae Ohio Society of Certified Public Accountants et al., at 1, 9-10. But of course, " '[a]*mici curiae* are not parties to an action and may not, therefore, interject issues and claims not raised by parties.' " *State ex rel. Citizen Action v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, ¶ 26, quoting *Lakewood v. State Emp. Relations Bd.*, 66 Ohio App.3d 387, 394, 584 N.E.2d 70 (8th Dist.1990).

The first dissenting opinion then shifts gears and contends that "assum[ing]" the statute means what the parties say it means, dissenting opinion of Kennedy, C.J., at ¶ 67, the statute violates the Home Rule Amendment because it "*required* Cincinnati to collect taxes on income earned by certain nonresidents for work performed outside the city limits" (emphasis in original), *id.* at ¶ 59. In other words, the first dissenting opinion contends that the statute violates Cincinnati's rights under the Home Rule Amendment. But the only party that might have standing to complain of such an injury—the city of Cincinnati—argues that the statute is constitutional.

Finally, the first dissenting opinion suggests that "there is a role for federal due process to play in matters of municipal taxation." *Id.* at ¶ 82. It fails, however, to identify any United States Supreme Court precedent that supports that proposition or to explain how the federalism-based line of Supreme Court precedent on this issue has any application to a state's internal apportionment of taxes.

### D. The "Emergency Laws" Provision of the Ohio Constitution Does Not Expand the Legislature's Substantive Powers

{¶ 53} In his third proposition of law, Schaad asserts that "[t]he General Assembly's authority to pass 'Emergency Laws' under Article II, Section 1d of the Ohio Constitution does not expand its substantive constitutional powers." We agree.

{¶ 54} Article II, Section 1d provides that "emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect," and it requires that such emergency legislation receive a two-thirds vote of each house of the General Assembly. Beyond allowing for the immediate effectiveness of such enactments, it does not expand the General Assembly's powers.

{¶ 55} But nothing about our agreement with this proposition changes the result of this case. As we have explained, the legislature's enactment of Section 29 was within its authority under the Ohio Constitution and does not offend the federal Due Process Clause.

### III. CONCLUSION

{¶ 56} Section 29 of H.B. 197 does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and was a valid exercise of the General Assembly's constitutional authority. We affirm the decision of the First District Court of Appeals.

Judgment affirmed.

DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

KENNEDY, C.J., dissents, with an opinion.

FISCHER, J., dissents, with an opinion.

_____

**KENNEDY, C.J., dissenting.**

**{¶ 57}** In response to the COVID-19 pandemic, the General Assembly enacted 2020 Am.Sub.H.B.No. 197 ("H.B. 197"). Section 29 of that enactment provided that during the state of emergency declared by the governor and for 30 days thereafter, and for purposes of R.C. Chapter 718, an employee working from home would be deemed to be working at "the employee's principal place of work." In my view, Section 29 does not have anything to do with assessing a nonresident's municipal-tax liability. However, according to the majority, this uncodified law allowed the city of Cincinnati and its finance director, appellee, Karen Alder, to collect a tax on income that appellant, Josh Schaad—a nonresident—earned while working outside the city limits.

**{¶ 58}** Article XVIII, Section 3 of the Ohio Constitution, the Home Rule Amendment, grants Ohio municipalities the power of local self-government, which includes the authority to impose and collect income taxes. However, like other exercises of home-rule authority, the power to tax is not unlimited, and the Home Rule Amendment does not empower a municipality to enact an extraterritorial tax on income earned or received outside the boundaries of the municipality. And Cincinnati's income-tax legislation falls within the grant of home-rule authority because the tax does not apply extraterritorially.

**{¶ 59}** But if the majority's interpretation of Section 29 is correct, then its enactment, when read in conjunction with R.C. Chapter 718, *required* Cincinnati to collect taxes on income earned by certain nonresidents for work performed outside the city limits. This is because Section 29 temporarily modified R.C. Chapter 718, which compels municipalities to adopt the statutory scheme of taxation provided in that chapter of the code and prohibits them from enforcing any tax ordinance that is in conflict with those statutory provisions.

{¶ 60} In my view, as construed by the majority, Section 29 of H.B. 197 is unconstitutional. Our caselaw recognizes that the Home Rule Amendment denies the General Assembly authority to dictate to municipalities what income tax to impose. And although the Ohio Constitution permits the General Assembly to limit and restrict a municipality's taxing power, *see* Article XVIII, Sections 3 and 13 and Article XIII, Section 6, under no fair reading of the Ohio Constitution can Section 29 be understood to be a limit or restriction on Cincinnati's taxing authority. The General Assembly cannot commandeer a municipality's home-rule taxing authority and replace it with a statutory scheme that requires extraterritorial taxation. The Home Rule Amendment denies the General Assembly that power.

{¶ 61} Consequently, I would reverse the judgment of the First District Court of Appeals. Because the majority does otherwise, I dissent.

### Cincinnati's Income Tax and Section 29 of H.B. 197

{¶ 62} Under its municipal legislation, Cincinnati levies a tax on the "income of every person residing in or earning or receiving income in the City of Cincinnati." Cincinnati Municipal Code 311-1(b). The city does not tax the income of people who do not reside or earn or receive income within the city limits, and therefore, its municipal income tax is not an extraterritorial tax on the income of nonresidents who do not physically work inside the city limits. *See id.* at 311-9-I1 and 311-9-M2.

{¶ 63} As the result of a statewide stay-at-home order issued during the COVID-19 pandemic, however, people who had been commuting from other political subdivisions to work inside Cincinnati's city limits began working from home. The income nonresidents earned was no longer subject to the city's income tax, and employers' withholding of taxes from employees who were spread across the region became much more complicated. *See* R.C. 718.03(A)(1) (generally requiring employers doing business in a municipality to withhold taxes from employees earning wages in the municipality).

**{¶ 64}** But the General Assembly stepped in with emergency legislation, which provided for the following during the emergency declared by the governor in response to the pandemic and for 30 days thereafter:

> [F]or the purposes of [R.C.] Chapter 718 * * * any day on which an employee performs personal services at a location, including the employee's home, to which the employee is required to report for employment duties because of the declaration shall be deemed to be a day performing personal services at the employee's principal place of work.

Section 29, H.B. 197.

**{¶ 65}** Initially, it does not appear that Section 29 made the income that Schaad earned for work he performed outside the city limits subject to Cincinnati's income tax. The uncodified language of Section 29 just provides that for purposes of R.C. Chapter 718, an employee working from home for the stated period will be deemed to have been working at the *employee's* principal place of work (not at the *employer's* principal place of business). The phrase "principal place of work" is relevant only for determining whether an employer is required to *withhold* municipal income taxes from an employee. *See* R.C. 718.011; *see also* Brief of Amici Curiae Ohio Society of Certified Public Accountants, et al., at 1, 9-10. But there is a difference between where an employer must withhold taxes from an employee and where an employee's income is taxable.

**{¶ 66}** Importantly, R.C. 718.01(B)(2) defines "income" of the nonresidents of a municipality as "all income, salaries, qualifying wages, commissions, and other compensation from whatever source earned or received by the nonresident *for work done, services performed or rendered, or activities conducted in the municipal corporation*." (Emphasis added.) The assessment of a

municipal income tax on nonresidents therefore does not turn on where an employee's principal place of work is located—it depends on where the employee's income was actually earned. R.C. Chapter 718 does not permit a municipality to collect tax on income that nonresidents earn outside of the municipality's territorial limits, *see* R.C. 718.01(B)(2), and Section 29 does not change that. In fact, the General Assembly recognized the confusion that Section 29 has caused, and in 2021 Am.Sub.H.B. No. 110, it amended Section 29 to clarify that going forward, the uncodified law must not be used to determine where a nonresident's work was completed for purposes of assessing municipal-income-tax liability. Therefore, income that Schaad earned outside Cincinnati's city limits was not subject to the city's municipal income tax.

{¶ 67} For the rest of this opinion, I will assume that Section 29 made the income Schaad earned from work he performed outside the city limits subject to Cincinnati's income tax.

### The Home Rule Amendment and Extraterritorial Taxes

{¶ 68} The Home Rule Amendment provides that "municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Article XVIII, Section 3, Ohio Constitution. This court has long recognized that the decision whether to levy taxes is included within the power of local self-government. *Put-in-Bay v. Mathys*, 163 Ohio St.3d 1, 2020-Ohio-4421, 167 N.E.3d 922, ¶ 12, citing *State ex rel. Zielonka v. Carrel*, 99 Ohio St. 220, 227, 124 N.E. 134 (1919). Ohio municipalities have their own constitutional authority—independent of any authority granted them by the General Assembly—to impose municipal taxes.

{¶ 69} A municipality's home-rule authority is not unlimited. A municipality has the power of *local* self-government, and it may exercise its police power *within its limits*. We have recognized that the power of local self-

government granted by the Home Rule Amendment is confined to the municipality's territorial boundaries, *Beachwood v. Cuyahoga Cty. Bd. of Elections*, 167 Ohio St. 369, 371, 148 N.E.2d 921 (1958), and we have explained that

> [t]o determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered.  If the result affects only the municipality itself, *with no extra-territorial effects*, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality.

(Emphasis added.)  *Id.*  In *Saturday v. Cleveland Bd. of Rev.*, we indicated that it is an " 'implied condition' " that a tax ordinance does not have extraterritorial effect. 142 Ohio St.3d 528, 2015-Ohio-1625, 33 N.E.3d 46, ¶ 21, quoting *Schneider v. Laffoon*, 4 Ohio St.2d 89, 96, 212 N.E.2d 801 (1965).

{¶ 70} But by virtue of Section 29, Cincinnati Municipal Code 311-1(b) had extraterritorial effect for a limited time, and under it, the city collected taxes on income earned by nonresidents while working outside the city limits.  That exceeded the home-rule authority granted to the city by Article XVIII, Section 3 of the Ohio Constitution, because the Home Rule Amendment does not empower a municipality to impose an extraterritorial tax.

### Limits and Restrictions on the Power to Tax

{¶ 71} The General Assembly does have a role in municipal taxation.  For example, Article XVIII, Section 13 of the Ohio Constitution provides that "[l]aws may be passed to limit the power of municipalities to levy taxes and incur debts." And Article XIII, Section 6 states that the General Assembly "shall * * * restrict [municipalities'] power of taxation * * * so as to prevent the abuse of such power."

**{¶ 72}** The 1911 edition of *Webster's New International Dictionary* defines the verb "limit" as "[t]o assign to or within certain limits" and "[t]o apply a limit to, or set a limit or bounds for." *Id*. at 1252. It defines the noun "limit" as "[t]hat which terminates, circumscribes, restrains, or confines; the bound, border, or edge; the utmost extent." *Id*. The verb "restrict" is synonymous with the verb "limit": it means "[t]o restrain with bounds; to limit; to confine." *Id*. at 1819. Though the definitions themselves are slightly different now, the meanings of these words are essentially unchanged. *See Webster's Third New International Dictionary* 1312 (2002) (defining "limit"); *id.* at 1937 (defining "restrict").

**{¶ 73}** To limit or restrict, then, is to set the extent of the bounds or authority beyond which something may not go. This court has therefore recognized that the General Assembly's power to limit municipal taxation and indebtedness

> does not authorize the legislature to annul or curtail the powers expressly granted by the Constitution. [The General Assembly] may limit the levies of taxes * * *, but it may not, either by action or inaction, *preclude the exercise of power expressly conferred by the Constitution*, or deny [a municipality] the use of its revenues from taxation or its general credit for any purpose authorized by constitutional provision or for any purpose within the powers of local self-government thereby conferred.

(Emphasis added.) *State ex rel. Toledo v. Weiler*, 101 Ohio St. 123, 129-130, 128 N.E. 88 (1920); *see also State ex rel. Bryant v. Akron Metro. Park Dist. for Summit Cty.*, 120 Ohio St. 464, 482-483, 166 N.E. 407 (1929) ("It is therefore the province of the General Assembly to determine the general governmental policy and the maximum of the extent of the imposition and collection of taxes for all purposes in the state").

**The Statutory Scheme for Municipal Income Taxes**

**{¶ 74}** Rather than limiting or restricting a municipality's home-rule authority to tax, the General Assembly has overridden it. R.C. 718.04(A) provides that a municipality may not impose an income tax unless it is levied in accordance with R.C. Chapter 718, and the legislature required municipal-income-tax ordinances and resolutions to incorporate all the provisions of R.C. Chapter 718 by January 1, 2016. Further, R.C. 718.04(F) prohibits any municipality from enforcing a tax ordinance or resolution that conflicts with the provisions of R.C. Chapter 718.

**{¶ 75}** The General Assembly has therefore sought to preclude municipalities' exercise of the home-rule power to tax and mandated that they adopt the statutory scheme for imposing income taxes. That scheme dictates the type of income that is subject to municipal taxation and the exemptions that apply. *See* R.C. 718.01(B) (defining "income") and (C) (defining "exempt income"). And by enacting Section 29 of H.B. 197, the General Assembly imposed another requirement for the exercise of a municipality's home-rule power to tax: during the emergency period and for 30 days thereafter, the tax had to be assessed extraterritorially on nonresidents who previously had a principal place of work in Cincinnati, whether they intended to return to work there or not. Section 29 modified R.C. Chapter 718, and municipalities are statutorily required to comply with that chapter of the code.

**{¶ 76}** Doing all of this does not limit or restrict a municipality's power to tax. And contrary to the majority's analysis, it does not even represent a grant of power to municipalities that goes beyond constitutional home-rule authority. Rather, the General Assembly has overridden the home-rule power to impose a municipal income tax and replaced it with R.C. Chapter 718's statutory scheme. And faced with losing substantial revenue from income taxes, municipalities had little choice but to go along with that scheme. After all, tax revenue is essential to

a municipality's exercising its home-rule authority—"without this power [of taxation,] local government in cities could not exist for a day." *Zielonka*, 99 Ohio St. at 227, 124 N.E. 134.

## The General Assembly May Not Commandeer a Municipality's Power of Taxation

**{¶ 77}** However, the General Assembly lacks the power to preclude municipalities from exercising their home-rule authority to tax, nor can it dictate how they will impose income taxes. *See* Article XVIII, Section 3, Ohio Constitution; *Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, 3 N.E.3d 1177, ¶ 22; *Weiler*, 101 Ohio St. at 129-130, 128 N.E. 88. That means the legislature may not require municipalities to collect taxes on income that a nonresident earned while working outside the city limits.

**{¶ 78}** At issue in *Gesler* was the city of Worthington's tax on net profits of certain identified businesses and residents—a tax that excluded income reported on Schedule C of the taxpayers' federal-income-tax return. *Id.* at ¶ 11. However, the municipal-income-tax statutes at the time required municipalities to include income reported on Schedule C in a taxpayer's net profits. *Id.* at ¶ 15-16. This court held that the taxpayers were entitled to a refund for municipal income taxes that had been collected on Schedule C income. We explained that "the General Assembly [was] not exercising power to limit or restrict municipal taxing authority, but rather [was] directing imposition of a tax on Schedule C income" and that "the General Assembly [could not] command Worthington to impose a tax on Schedule C income when Worthington [had] chosen not to tax that income, because such a requirement [was] not an act of limitation." *Id.* at ¶ 22.

**{¶ 79}** The majority opinion in this case does not overrule *Gesler*, but rather, it says that its conclusion is distinguishable from *Gesler* because "Cincinnati very much supports the additional temporary authority granted to it by the legislature," majority opinion at ¶ 49. However, there is no indication in *Gesler*

that Worthington objected to collecting the additional tax revenue—like Cincinnati in this case, the city in *Gesler* had rejected the taxpayers' requests for a refund—but this court nonetheless held that the city could not tax Schedule C income. And the majority here is incorrect when it says that "there is nothing inconsistent between the Home Rule Amendment's delegation of taxing authority and the legislature's grant of additional taxing authority in Section 29," majority opinion at ¶ 49. Article XVIII, Section 3 of the Ohio Constitution gives municipalities the prerogative to decide whether and how to levy a tax on municipal income, and Section 29 of H.B. 197—like the rest of R.C. Chapter 718—dictates to municipalities how they will exercise this power of local self-government. In doing that, the General Assembly has contravened municipal home-rule authority.

{¶ 80} As in *Gesler*, the General Assembly never gave Cincinnati or any other municipality a choice whether to assess an extraterritorial tax. R.C. 718.04 requires municipalities that wish to impose an income tax to incorporate R.C. Chapter 718 in its entirety into their tax ordinances, and Cincinnati did so. *See* Cincinnati Municipal Code 311-1(a). Now, any change that the General Assembly enacts in R.C. Chapter 718—including the mandatory presumption created by Section 29—automatically becomes the law of Cincinnati and other municipalities, whether they want it to or not. And if a municipality does not want the enactment to be part of its city ordinances, its sole choice is to repeal its tax ordinance and forgo imposing a municipal income tax. This type of "gun to the head" legislation, *Natl. Fedn. of Indep. Business v. Sebelius*, 567 U.S. 519, 581, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012) (plurality opinion), is plainly coercive. Therefore, in this case just as in *Gesler*, the General Assembly has compelled municipalities to collect a tax in violation of the Home Rule Amendment. And just as in *Gesler*, this court should acknowledge the limits of the General Assembly's authority and strike down Section 29.

**{¶ 81}** "Because tax revenue is essential to the exercise of home-rule authority, any statute that conditions the ability to levy taxes on enacting whatever ordinance the General Assembly demands is in conflict with the Home Rule Amendment's grant of power to municipalities to control matters of local self-government." *Athens v. McClain*, 163 Ohio St.3d 61, 2020-Ohio-5146, 168 N.E.3d 411, ¶ 78 (Kennedy, J., concurring in judgment only in part and dissenting in part). Section 29 does just that, and it therefore violates the Home Rule Amendment.

### Federal Due Process

**{¶ 82}** Because Section 29 of H.B. 197 is unconstitutional under the Ohio Constitution, it is not necessary to address Schaad's contention that it also violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Nonetheless, I question whether the majority is correct that federal due process has no place in our deciding whether a municipal tax on nonresidents is lawful given the absence of a fiscal connection between the tax-funded benefits that a municipality provides (e.g., roads, public safety) and a nonresident taxpayer who does not use any of those benefits. Although the majority asserts that the United States Supreme Court "has made clear that this strain of its due process jurisprudence does not apply to matters of intrastate taxation," majority opinion at ¶ 27, I am unconvinced by the cases the majority cites in support of that statement. Both *Interstate Oil Pipe Line Co. v. Stone*, 337 U.S. 662, 69 S.Ct. 1264, 93 L.Ed. 1613 (1949), and *Internatl. Harvester Co. v. Evatt*, 329 U.S. 416, 67 S.Ct. 444, 91 L.Ed. 390 (1947), involved *statewide* taxes imposed on intrastate activities. The Supreme Court had no opportunity in those cases to decide whether due process has any bearing on a municipal tax that has been applied beyond the municipality's taxing jurisdiction. And this court has recognized that there is a role for federal due process to play in matters of municipal taxation. *See, e.g.*, *Angell v. Toledo*, 153 Ohio St. 179, 185, 91 N.E.2d 250 (1950).

**Conclusion**

{¶ 83} The General Assembly lacks the power to compel Cincinnati to collect taxes on income earned or received by a nonresident while working outside the city limits. The city therefore improperly denied Schaad's request for a refund, and I would reverse the judgment of the First District Court of Appeals for that reason. Because the majority does not, I dissent.

———————————

FISCHER, J., dissenting.

{¶ 84} For the reasons set forth in my dissenting opinion in *Willacy v. Cleveland Bd. of Income Tax Rev.*, 159 Ohio St.3d 383, 2020-Ohio-314, 151 N.E.3d 561, I respectfully dissent. As noted in the first dissenting opinion, "this court has recognized that there is a role for federal due process to play in matters of municipal taxation." Dissenting opinion of Kennedy, C.J., ¶ 82 citing *Angell v. Toldeo*, 153 Ohio St. 179, 185, 91 N.E.2d 250 (1950). I agree with the portion of that opinion that questions the majority opinion's conclusion that matters of intrastate taxation are not subject to federal-due-process concerns. *See id.* I would reverse the decision of the First District Court of Appeals and hold that as applied to appellant, Josh Schaad, the law at issue in this case violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

{¶ 85} The United States Supreme Court has made it clear that "due process requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-345, 74 S.Ct. 535, 98 L.Ed. 744 (1954). As explained in the first dissenting opinion, the Supreme Court has not yet had an opportunity to explain how due-process protections apply in the context of a municipal tax that is applied beyond the municipality's taxing jurisdiction. *See* dissenting opinion of Kennedy, C.J., at ¶ 82. As detailed in my dissenting opinion in *Willacy*, the principles set forth in federal-due-process jurisprudence apply in the context of municipal tax and

"the Due Process Clause requires a minimum connection between a government and the people, property, and transactions it seeks to tax," *Willacy* at ¶ 60 (Fischer, J., dissenting).

**{¶ 86}** In this case, the relevant law required Cincinnati to tax all the income Schaad earned during the state of emergency declared by the governor and for 30 days thereafter, *see* 2020 Am.Sub.H.B.No. 197, Section 29, even though Schaad spent some of that time working in Blue Ash, where he resides. When he worked in Blue Ash, Schaad plainly derived no benefit from Cincinnati. Put simply: no link, no minimum connection existed between Cincinnati and Schaad during the relevant time frame. As I have previously explained,

> [a]ny way you slice it, such extraterritorial taxation is surely inconsistent with " '*traditional notions* of fair play and substantial justice,' " (emphasis added) *Internatl. Shoe* [*Co. v. Washington*], 326 U.S. [310,] 316, 66 S.Ct. 154, 90 L.Ed. 95 [(1945)], quoting *Milliken* [*v. Meyer*], 311 U.S. [457,] 463, 61 S.Ct. 339, 85 L.Ed. 278 [(1940)]. *See Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877) (a state has personal jurisdiction over a nonresident when that person is physically present in that state), *overruled in part*, *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and *Rose v. Himely*, 8 U.S. 241, 277, 2 L.Ed. 608 (1808) ("It is repugnant to every idea of a proceeding *in rem*, to act against a thing which is not in the power of the sovereign under whose authority the court proceeds"), *overruled in part*, *Hudson v. Guestier*, 10 U.S. 281, 3 L.Ed. 224 (1810); *see also* Declaration of Independence, July 4, 1776 ("Governments are instituted among Men, deriving their just powers from the consent of the governed").

*Willacy* at ¶ 59.

{¶ 87} For these reasons, I respectfully dissent. I would reverse the judgment of the First District Court of Appeals and remand the cause to the trial court for further proceedings.

————————————

The Buckeye Institute, Robert Alt, Jay R. Carson, and David C. Tryon, for appellant.

Ice Miller, L.L.P, Diane M. Menashe, and Daniel Anderson, for appellee.

Mark S. Yurick, City Attorney, urging reversal for amicus curiae city of Lebanon, Ohio.

Zaino Hall & Farrin, L.L.C., Thomas M. Zaino, and Stephen K. Hall, urging reversal for amici curiae Ohio Society of Certified Public Accountants, National Federation of Independent Business, North Central Ohio Chapter of the National Electrical Contractors Association, Greater Cleveland Chapter of the National Electrical Contractors Association, and Manufacturing Policy Alliance.

Joseph D. Henchman, urging reversal for amicus curiae National Taxpayers Union Foundation.

Dentons Bingham Greenebaum, L.L.P, and Mark A. Loyd, urging reversal for amicus curiae Ohio Chamber of Commerce.

Robinson Law Firm, L.L.C., and Emmett E. Robinson; Schaerr Jaffe, L.L.P, Gene C. Schaerr, and Kathryn Tarbert, urging reversal for amicus curiae Independent Women's Law Center.

Frost Brown Todd, L.L.C., Philip K. Hartmann, Thaddeus M. Boggs, and Jesse J. Shamp; and Garry E. Hunter, urging affirmance for amicus curiae Ohio Municipal League.

————————————